UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| O'Shea Chairse and Sean Burgess, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br>   vs.<br>State of Minnesota Department of Human Services and Minnesota Commissioner of Human Services Jodi Harpstead, in her official and individual capacities,<br><br>                              Defendants. | Civil File No. 23-cv-355 (ECT/ECW)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## PRELIMINARY STATEMENT

1. This suit challenges the failure of the State of Minnesota Department of Human Services ("DHS") to comply with Minn. Stat. § 253B.10, subd. 1(b), which requires DHS to transfer civilly committed inmates to a state-operated treatment facility within 48 hours of their civil commitment.

2. There are more than 60 inmates who have been waiting weeks or even months to be transferred to a state-run treatment facility following their civil commitment. Additional individuals were previously harmed and/or will be harmed in the future by DHS's failure to transfer them to a state-operated treatment facility within 48 hours of their civil commitment.

3. A 2016 report from the Office of the Legislative Auditor warned about violations of Minn. Stat. § 253B.10. The report found the availability of "secure inpatient beds" was "inadequate" to meet demand in 2016.
4. The same report stated that "delays in placing individuals into treatment . . . may have increased county jails' risks, potentially affecting the health or safety of the patient, fellow jail inmates, and jail staff."
5. In September 2022, Scott County Judge Christopher Wilton said, referring to Minn. Stat. § 253B.10, "I've never seen a statute where there's just overt failure to comply, and it's not even close."
6. In an October 26, 2022 order, Scott County Judge Colleen King concluded that the "law requires that within 48-hours of commitment, the committed person must be placed by the Commissioner of Human Services in a state-operated treatment facility."
7. Judge King stated: "The Commissioner of Human Services has violated the 48-hour rule in Scott County cases since at least the spring of 2021 . . . . Since that time, at least 4 individuals have been committed in Scott County under circumstances where the 48-hour rule would apply, and in each of those cases, the committed person was not transferred out of the jail for treatment within, or even close to, 48-hours."
8. Judge King stated: "The Scott County Jail is not a treatment facility."
9. Judge King stated: "Petitioner has been denied necessary care for his mental illness while in the jail. The petitioner has thus been denied due process under the United States and Minnesota Constitutions."
10. Judge King stated: "The Commissioner of Human Services has failed to comply with a duty imposed by law necessitating judicial intervention and oversight. The 48-hour rule found in M.S.A. §253B.10, subd. 1

creates a clear and unequivocal legal duty for the Commissioner to place the Petitioner in a state-operated treatment program within 48-hours of his commitment . . . . There is no exception [to] that 48-hour rule under Minnesota law."

11. Judge King stated: "The Commissioner has been aware that compliance with the 48-hour rule is required and has had ample time to comply given that this issue was identified in 2016 in a report from the Office of the Legislative Auditor."

12. In November 2022, Scott County Judge Colleen King said, "There are countless . . . individuals who are languishing in jails because the issue has not been addressed. Wrongful incarceration is not the United States of America."

13. The situation in Scott County described by Judge King is not unique to Scott County, but reflects a pattern occurring throughout the State of Minnesota.

14. In a December 21, 2022 order, Scott County Judge Christian Wilton commanded Minnesota Commissioner of Human Services Jodi Harpstead "to provide the Court with 30-day reports concerning all cases in the State of Minnesota to which the 48-hour rule applies, identifying the originating County and the time and date that the 48-hour period would have expired for each patient."

15. DHS appealed Judge Wilton's December 21, 2022 order, arguing that Judge Wilton does not have the authority to require Commissioner Jodi Harpstead to submit monthly reports about her efforts to comply with Minn. Stat. § 253B.10.

16. On behalf of themselves and a class of similarly situated persons, Plaintiffs O'Shea Chairse and Sean Burgess file this action for

injunctive and/or monetary relief under 42 U.S.C. §§ 1983 and 1988, the Minnesota Constitution, and the common law of Minnesota. Plaintiffs seek an immediate writ of mandamus to compel Defendants' compliance with the law and for damages.

## PARTIES

17. Plaintiff O'Shea Chairse ("Plaintiff") is a resident of Minnesota.
18. Plaintiff Sean Burgess is incarcerated at the Ramsey County Adult Detention Center.
19. Defendant DHS is an agency of the State of Minnesota that has failed and continues to fail to comply with Minn. Stat. § 253B.10.
20. Defendant Jodi Harpstead is a resident of Minnesota. Harpstead serves as the Minnesota Commissioner of Human Services, and was at all times material herein responsible for DHS's compliance with Minnesota law, including Minn. Stat. § 253B.10. Plaintiff is suing Harpstead in her official and individual capacities.

## JURISDICTION

21. This is an action for injunctive and/or monetary relief under 42 U.S.C. §§ 1983 and 1988, the Minnesota Constitution, and the common law of Minnesota. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1343(a)(3), 1331, and 1367. Venue lies properly in this District pursuant to 28 U.S.C. § 1391, as the events giving rise to this action occurred in this District and, on information and belief, Defendants reside in this District.

## BACKGROUND

22. On or about October 17, 2022, Plaintiff Chairse was civilly committed as a person who posed a risk of harm due to a mental illness and a chemically dependent person to the Commissioner of Human Services.

4

23. However, the Commissioner of Human Services did not transfer Plaintiff Chairse to a state-run facility within 48 hours of his civil commitment on or about October 17, 2022.

24. Instead, he remained in the Hennepin County Jail until December 5, 2022, when his caseworker was able to have him admitted into New Way Treatment Center. During his time in Hennepin County Jail, he was denied his mental health medications and was kept in a suicide unit where he was only allowed out of his cell for short periods to shower or use the telephone.

25. On or about November 9, 2022, Plaintiff Burgess was civilly committed.

26. However, the Commissioner of Human Services did not transfer Plaintiff Burgess to a state-run facility within 48 hours of his civil commitment on or about November 9, 2022.

27. Instead, he remained in the Ramsey County Adult Detention Center until early February 2023, when he was admitted into a drug treatment center. However, Plaintiff Burgess became sick with COVID-19 while at the drug treatment center and was removed from the center for related reasons, and later returned to the Ramsey County Adult Detention Center, where he has been incarcerated (and not transferred to a state-run facility) for weeks.

28. Plaintiffs and others similarly situated suffered unlawful incarceration, lack of access to mental health therapy and treatment, use of force, diminished quality and enjoyment of life, and psychological trauma and distress due to Defendants' actions and omissions discussed in this Complaint.

## CLASS ACTION ALLEGATIONS

29. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23.

30. Plaintiffs seek to represent two classes defined as: (1) all persons who have been detained in any jail or prison for more than 48 hours after having been ordered civilly committed under circumstances described in any of the four sub-paragraphs of Minn. Stat. § 253B.10, subd. 1(b), but have since been admitted to a state-run treatment facility (the "Delayed Admission Class"); and (2) all persons who have been detained in any jail or prison for more than 48 hours after having been ordered civilly committed under circumstances described in any of the four sub-paragraphs of Minn. Stat. § 253B.10, subd. 1(b), and have not yet been admitted or re-admitted (the "Awaiting Admission Class").

31. The proposed classes are so numerous that joinder of all members is impracticable. The Delayed Admission Class would extend back to the applicable statute of limitations, meaning it is likely that the Delayed Admission Class alone would contain hundreds of members.

32. There are questions of law and fact common to members of the proposed classes. These questions predominate over any questions unique to any individual class member and include, but are not limited to, the following:
    - Whether Minn. Stat. § 253B.10 ("Patients described in this paragraph must be admitted to a state-operated treatment program within 48 hours.") requires DHS to transfer a civilly committed inmate within 48 hours of their civil commitment;
    - Whether the liberty interest Plaintiffs and class members have in being transferred to a state-operated treatment programs within

> 48 hours of being civilly committed has been or is being violated by Defendants; and
> 
> - Whether Defendant's violation of the 48-hour rule discussed in this Complaint violates Plaintiffs' and class members' independent due process right to adequate medical care;
> - Whether Defendants' conduct violates procedural and/or substantive due process under the Minnesota or U.S. Constitution;
> - Whether Defendants' conduct constitutes false imprisonment; and
> - Plaintiffs' and class members' damages.

33. The claims of the representative parties, the named plaintiffs, are typical of the claims of the members of the class.

34. The representative parties, the named plaintiffs, will fairly and adequately protect the interests of their respective classes. Plaintiffs and class members have not interests adverse to the interests of their respective classes. Plaintiff are committed to prosecuting this action to final resolution and have retained competent counsel with experience in class action and civil rights litigation who will vigorously pursue this litigation on behalf of the classes.

35. A class action is superior to other methods of adjudicating this controversy.

36. The prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

37. Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate final injunctive and/or monetary relief with respect to the classes as a whole.

38. The identity of class members would be easily ascertainable from Defendants' records.

### CLAIMS FOR RELIEF
### COUNT 1
### 42 U.S.C. § 1983 – Fourteenth Amendment Substantive Due Process Violations Against Both Defendants

39. Plaintiff and class members restate the allegations contained in the previous paragraphs as if fully set forth herein.

40. Based on the above factual allegations, Defendants, through their actions, acting under the color of state law, violated Plaintiff's and class members' constitutional right to substantive due process under the Fourteenth Amendment to the United States Constitution by failing to transfer Plaintiff and class members to a state-operated treatment facility within 48 hours of their civil commitment. *See, e.g., Hall v. Lombardi*, 996 F.2d 954, 958 (8th Cir. 1993) ("There are many Supreme Court and Eighth Circuit cases that support the 'general, well-developed legal principle' that regulations which contain 'particularized substantive standards or criteria that guide the exercise of discretion . . . create a protectible liberty interest. . . . Moreover, when these regulations contain language of a mandatory nature (shall, will, must), they are interpreted as creating a protectible liberty interest.").

41. As a result of this due process violation, Plaintiff and class members suffered damages.

## COUNT 2
### 42 U.S.C. § 1983 – Fourteenth Amendment Procedural Due Process Violations Against Both Defendants

42. Plaintiff restates the allegations contained in the previous paragraphs as if fully set forth herein.

43. Based on the above factual allegations, Defendants, through their actions, acting under the color of state law, violated Plaintiff's and class members' constitutional right to procedural due process under the Fourteenth Amendment to the United States Constitution by failing to provide notice or an opportunity to be heard regarding their decision not to transfer Plaintiff and class members to a state-operated treatment facility within 48 hours of their civil commitment.

44. As a result of this due process violation, Plaintiff and class members suffered damages.

## COUNT 3
### Negligence and Negligence Per Se Against Both Defendants

45. Plaintiff and class members restate the allegations contained in the previous paragraphs as if fully set forth herein.

46. Based on the above factual allegations, Defendants owed Plaintiff and class members a duty of care to follow Minnesota state law.

47. Defendants breached this duty of care by failing to transfer Plaintiff and class members to state-operated treatment facilities within 48 hours of their civil commitment.

48. DHS is vicariously liable to Plaintiff and class members for the negligence of its employees, including but not limited to Defendant Harpstead.

49. As a direct and proximate result of this negligence, Plaintiff and class members suffered damages.

## COUNT 4

## Substantive Due Process Under the Minnesota Constitution Against Both Defendants

50. Plaintiffs and the Plaintiff Classes restate and reallege the previous paragraphs above.

51. The Due Process protections guaranteed by the Minnesota Constitution are coextensive with those guaranteed by the United States Constitution. *State v. Holloway*, 916 N.W.2d 338, 344 (Minn. 2018).

52. Plaintiffs and the Plaintiff Classes had a liberty interest in freedom from incarceration and punishment – or incarceration and punishment greater than the term to which they were sentenced, if any – that is entitled to Substantive Due Process protection.

53. Plaintiffs and the Plaintiff Classes are members of particularly vulnerable community in need of special care and consideration because they are least able to assure the protection of their rights and needs. Prolonged confinement in jailhouse or prison conditions is punitively detrimental to the health and wellbeing of those with severe mental impairments.

54. Defendants' conduct directly led to the prolonged confinement of society's most vulnerable members. Defendant's systematic and ongoing disregard for the safety and active sabotage of the wellbeing of Plaintiffs and the Plaintiff Classes evinces deliberate injurious intent, shocks the conscience, and interferes with rights implicit in the concept of ordered liberty. This incarceration is punishment that is prohibited under the Minnesota Constitution absent a criminal conviction.

## Count 5

## Procedural Due Process Under the Minnesota Constitution Against Both Defendants

55. Plaintiffs and the Plaintiff Classes restate and reallege all previous paragraphs of this Complaint.

56. The Due Process protections guaranteed by the Minnesota Constitution are coextensive with those guaranteed by the United States Constitution. State v. Holloway, 916 N.W.2d 338, 344 (Minn. 2018).

57. Plaintiffs and the Plaintiff Classes have a liberty interest to be admitted to a state-operated treatment program within 48 hours of their commitment. The 48-hour rule is not discretionary. The statutory language is clear and unambiguous. The statute at issue mandates that Plaintiffs and the Plaintiff Classes, by falling within the ambit of civil commitments subject to the 48-hour rule, had a concrete expectation that they would be released from jail and admitted into treatment within 48 hours.

58. Defendants' conduct constitutes a substantial deprivation of liberty. Under the statute at issue, persons who are committed are not only entitled to proper mental health treatment, but a host of other services and liberties not otherwise afforded to jail detainees or prisoners. Despite being found in substantial need of commitment, Defendants' conduct directly caused Plaintiffs and the Plaintiff Classes to be held in jail or prison for weeks or months.

59. Plaintiffs and the Plaintiff Classes' liberty interest is entitled to Due Process protection, which Defendants violated by refusing to admit them to a state-operated treatment program within 48 hours of their commitment.

11

60. Plaintiffs and the Plaintiff Classes had a separate and independent Due Process right to adequate medical care while in state custody.
61. The medical needs of Plaintiff Burgess and the Awaiting Admission Class are unquestionably serious and apparent, as those needs were found by courts to be serious enough to warrant competency examination and treatment.
62. Defendants conduct, by failing to admit these individuals within the required 48 hours after a court order committing them to Defendants' custody, was and continues to be deliberately indifferent to these serious medical needs by continuously denying and delaying Plaintiff Burgess's and the Awaiting Admission Class's access to treatment they needed.
63. Similarly, the medical needs of Plaintiff Chairse and the Delayed Admission Class were unquestionably serious and apparent, as those needs were found by courts to be serious enough to warrant competency examination and treatment.
64. Defendants, by failing to timely admit these individuals after a court order committing them to Defendants' care, were deliberately indifferent to these serious medical needs by delaying Plaintiff Chairse's and the Delayed Admission Class's access to treatment they needed.

## Count 6
## False Imprisonment Under Minnesota Common Law Against Both Defendants

65. Plaintiffs and the Plaintiff Classes restate and reallege the previous paragraphs above.

66. Defendants acted intentionally to confine Plaintiffs and the Plaintiff Classes and caused such confinement to continue, which caused Plaintiffs and the class members harm. Defendants did so within the scope of Defendants' office or employment.
67. A private person who confined Plaintiffs and the class members under the circumstances alleged herein would be civilly liable to Plaintiffs and the class members for false imprisonment.
68. As a direct and proximate result of Defendants' conduct, Plaintiffs and the class members sustained damages for which Defendants are liable, in an amount to be established at trial.
69. Defendants had knowledge of and intentionally disregarded facts that create a high probability of injury to the rights and safety of Plaintiffs and the class members, and acted in conscious and intentional disregard of that probability of injury.

### Count 7
### Intentional Infliction of Emotional Distress Under Minnesota Common Law Against Both Defendants

70. Plaintiffs and the Plaintiff Classes restate and reallege all previous paragraphs above.
71. Defendants' intentional conduct as alleged herein is extreme and outrageous, in that it passes the boundaries of decency and is utterly intolerable to the civilized community.
72. Defendants' conduct caused severe emotional distress to Plaintiffs and the Classes.
73. A private person who acted in the way Defendants did under the circumstances alleged herein would be civilly liable to Plaintiffs and the class members for intentional infliction of emotional distress.

74. As a direct and proximate result of Defendants' conduct, Plaintiffs and the Classes sustained damages for which Defendants are liable, in an amount to be established at trial.

75. Defendants had knowledge of and intentionally disregarded facts that create a high probability of injury to the rights and safety of Plaintiffs and the Classes and acted in conscious and intentional disregard of that probability of injury.

Count 8

Petition for Alternative Writ of Mandamus

76. Plaintiffs and the Plaintiff Classes restate and reallege all previous paragraphs above.

77. Defendants' refusal to admit Plaintiff Burgess and the Awaiting Admission Class Members to state-operated treatment facilities as required by Minn. Stat. § 253B.10, subd. 1(b) entitles Plaintiff Burgess and the Awaiting Admission Class Members to issuance of an alternative writ of mandamus that compels Defendants to comply with the law and awards Plaintiff Burgess and the Awaiting Admission Class members any damages resulting from Defendants' failure to do so

PRAYER FOR RELIEF

Plaintiff requests that the Court:

1. Certify this matter as a class action under Federal Rule of Civil Procedure Rule 23;

2. Define the certified classes as (1) all persons who have been detained in any jail or prison for more than 48 hours after having been ordered civilly committed under circumstances described in any of the four sub-paragraphs of Minn. Stat. § 253B.10, subd. 1(b), but have since been

admitted to a state-run treatment facility (the "Delayed Admission Class"); and (2) all persons who have been detained in any jail or prison for more than 48 hours after having been ordered civilly committed under circumstances described in any of the four sub-paragraphs of Minn. Stat. § 253B.10, subd. 1(b), and have not yet been admitted or re-admitted (the "Awaiting Admission Class").

3. Issue a judgment declaring that Defendants violated and continue to violate the right to due process enshrined in the Minnesota and United States Constitutions when they fail to transfer civilly committed inmates to state-operated treatment facilities withing 48 hours of their civil commitment, and an order permanently enjoining Defendants from depriving Plaintiffs and the class members of their constitutional rights.
4. Appoint Plaintiffs and their counsel to represent the classes pursuant to Federal Rule of Civil Procedure 23;
5. Issue a writ of mandamus compelling Defendants' compliance with Minn. Stat. § 253B.10(b);
6. Schedule a jury trial on the claims of Plaintiffs and class members;
7. Award injunctive relief and/or damages to Plaintiffs and class members for the harm they have suffered against each Defendant, jointly and severally, including but not limited to compensatory, pecuniary, and medical expense damages;
8. Award punitive damages against Defendant Jodi Harpstead pursuant to *Smith v. Wade*, 461 U.S. 30 (1983);
9. Award pre- and post-judgment interest, to the extent allowable;
10. Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

11. Provide any additional relief the Court deems just and proper.

## JURY DEMAND

Plaintiff and class members request a jury trial for all matters so triable by a jury.

THE LAW OFFICE OF ZORISLAV R. LEYDERMAN

Dated: March 7, 2023

By: s/ Zorislav R. Leyderman
ZORISLAV R. LEYDERMAN
Attorney License No. 0391286
Attorney for Plaintiff
The Law Office of Zorislav R. Leyderman
222 South 9th Street, Suite 1600
Minneapolis, MN 55402
Tel: (612) 876-6626
Email: zrl@ZRLlaw.com

Dated: March 7, 2023

s/Tim Phillips
Tim Phillips (#390907)
Law Office of Tim Phillips
331 Second Avenue South, Suite 400
TriTech Center
Minneapolis, Minnesota 55401
Phone: (612) 470-7179
Email: tim@timphillipslaw.com

ATTORNEYS FOR PLAINTIFFS