UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

O'Shea Chairse and Sean Burgess,
on behalf of himself and all others
similarly situated,

                Plaintiffs,

    vs.

Minnesota Department of Human Services
and Jodi Harpstead, in her official and
individual capacity as Commissioner of the
Department of Human Services,

                Defendants.

Civil File No. 23-cv-00355 (ECT/ECW)

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT**

## INTRODUCTION

Plaintiffs' Complaint must be dismissed, or else every alleged violation of state law will also become a violation of the United States Constitution. Plaintiffs make the extraordinary assertion that a state statute establishes a fundamental Constitutional right, asking the Court to exceed long-established boundaries on substantive and procedural due process. But the Supreme Court and the Eighth Circuit impose limits on the conflation of state law and Constitutional rights, and Plaintiff cannot overcome these hurdles. Under the Eighth Circuit's standards, Plaintiffs have not, and cannot, show that either their substantive or procedural due process rights were violated.

While Plaintiffs now plead various additional state law claims, none state a claim upon which relief can be granted. They do not plausibly allege violations of state law, only reciting the threadbare elements of the claims they assert. And Plaintiffs' mandamus

petition must be dismissed because Plaintiffs fail to identify a clear right to the outcome demanded. The Amended Complaint should be dismissed in its entirety.

## FACTUAL BACKGROUND

Plaintiff O'Shea Chairse alleges that he was civilly committed by court order on October 17, 2022.  ECF #12 ("Am. Compl.") ¶ 22.  Chairse alleges that he remained in Hennepin County Jail until December 5, 2022, when he was admitted to the New Way Treatment Center.  *Id.*  ¶¶ 23-24.   Plaintiff Sean Burgess alleges that he was civilly committed by court order on or about November 9, 2022.  *Id.* ¶ 25.  Burgess alleges that he remained at the Ramsey County Adult Detention Center until early February 2023, when he was admitted to a drug treatment center.  *Id.* ¶ 27.  Burgess was allegedly removed from the drug treatment program and returned to the Ramsey County Adult Detention Center sometime later, where he currently remains.  *Id.*

Plaintiffs allege that the Minnesota Department of Human Services ("DHS") and its Commissioner, Jodi Harpstead, (collectively, "Defendants") had an obligation under Minn. Stat. § 253B.10, subd. 1(b) to admit Plaintiffs to a state-operated treatment program within 48 hours of their civil commitments.  *See, e.g.,* Am. Compl. ¶ 1.[1]  Subdivision 1(b) requires that "Patients described in this paragraph must be admitted to a state-operated treatment program within 48 hours."  Minn. Stat. § 253B.10, subd. 1(b).

Plaintiffs seek to represent two classes of persons who, under Minn. Stat. § 253B.10, subd. 1(b), they claim were entitled to be admitted to a state-operated treatment facility

---

[1] Defendants disagree with Plaintiffs' interpretation of the timing requirements in the statute.  *See infra* Part VII.A.

"within 48 hours," but were not admitted within that time period (the "Delayed Admission" and "Awaiting Admission" Classes, depending on whether the class members have been admitted yet or not). Am. Compl. ¶ 30. Plaintiffs claim that, by failing to admit Plaintiff and the putative class members as alleged, Defendants violated both procedural due process and substantive due process under the Fourteenth Amendment to the U.S. Constitution. Am. Compl. Counts I and II. Plaintiffs also bring a variety of state law claims for the same conduct: negligence (*id.* at Count III), substantive and procedural due process claims under the Minnesota Constitution (*id.* at Counts IV-V), false imprisonment (*id.* at Count VI), and intentional infliction of emotional distress (*id.* at Count VII). Finally, Plaintiffs bring a "claim" for a petition for an alternative writ of mandamus under Minnesota statute. *Id.* at Count VIII.

## STANDARD OF REVIEW

Rule 12(b)(6) eliminates actions that are fatally flawed in their legal premises, "streamlin[ing] litigation by dispensing with needless discovery and fact finding." *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true and construes the pleadings in a light most favorable to the non-moving party. *See Brotherhood of Maint. of Way Emp. v. Burlington N. Santa Fe R.R.,* 270 F.3d 637, 638 (8th Cir. 2001). However, to avoid dismissal, a complaint must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 680-81 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)); *see also Dubois v.*

*Ford Motor Credit Co.*, 276 F.3d 1019, 1022 (8th Cir. 2002) ("[A] complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claims[.]").

Importantly, the Court is "not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) (quoting *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009)). Similarly, "the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

A plaintiff bringing claims under 42 U.S.C. § 1983 "must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013). That being said, "[c]onstitutional claims brought under 42 U.S.C. § 1983 are discrete claims and as such should not be pled in a shotgun manner." *Benson v. Piper*, No. 17-CV-266, 2019 WL 2017319, at *9 (D. Minn. Jan. 25, 2019), *report and recomm. adopted*, No. CV 17-266, 2019 WL 1307883 (D. Minn. Mar. 22, 2019) (quoting *Liggins v. Morris*, 749 F. Supp. 967, 971 (D. Minn. 1990)). Pleading constitutional claims without particularity "unfairly burdens defendants and courts by shifting onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support."

4

*Id.* (quoting *Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153

(D. Minn. 2011) (internal quotations omitted).

## ARGUMENT

I. **PLAINTIFFS FAIL TO ALLEGE DEFENDANTS VIOLATED A SUBSTANTIVE DUE PROCESS RIGHT AS ALLEGED IN COUNTS I AND IV.**

The Due Process Clause of the Fourteenth Amendment prohibits states from

depriving "any person of life, liberty, or property, without due process of law[.]"

U.S. Const. amend. XIV, § 1.[2]   There are two recognized components to this clause:

procedural due process and substantive due process.  *See County of Sacramento v. Lewis*,

523 U.S. 833 (1998).  "'[T]he possession of a protected life, liberty, or property interest is

. . . a condition precedent' to any due process claim."  *Singleton v. Cecil*, 176 F.3d 419,

424 (8th Cir. 1999) (citation omitted).

Substantive due process analysis has two primary features: (1) it only specially

protects those fundamental rights and liberties which are, objectively, deeply rooted in the

nation's history and tradition, and (2) in order for a court to grant substantive due process

protection, a court requires the moving party provide a "careful description" of the asserted

fundamental liberty interest.  *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

---

[2] This Court should analyze Plaintiffs' federal and state due process claims coextensively. The Minnesota Constitution provides that an individual will not be deprived of life, liberty, or property without due process of law.  Minn. Const. art. 1, § 7.  And due process protection provided under the Minnesota Constitution is "identical to the due process guaranteed under the Constitution of the United States," *Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448, 453 (Minn. 1988), so courts must "consider relevant federal cases as guidance."  In re Individual 35W Bridge Litig., 806 N.W.2d 820, 832 n.10 (Minn. 2011). Further Plaintiffs affirmatively allege that the due process protections they claim under the Minnesota Constitution "are coextensive with those guaranteed by the United States Constitution."  Am. Compl. Counts IV and V.

Whether a substantive due process right exists is a question of law that requires balancing an individual's "liberty interests against the relevant state interests." *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982). Here, Plaintiffs have not alleged a fundamental right objectively, deeply rooted in the nation's history and tradition. Violations of state law alone are insufficient to state a substantive due process right, and plaintiffs plead no other facts to suggest that they could meet the extraordinarily high burden to plead violation of a substantive due process right.

**A.    There Is No Fundamental Right To Be Admitted To A State-Operated Treatment Facility Within 48 Hours Of Being Civilly Committed.**

Plaintiffs have not clearly identified what specific interest they or the putative class members have that entitles them to substantive due process protections under the United State Constitution and Minnesota Constitution. It appears, however, that Plaintiffs believe Defendants violated substantive due process by "failing to transfer Plaintiffs and class members to a state-operated treatment facility within 48 hours of their civil commitment." Am. Compl. ¶ 40. Plaintiffs allege that the statute, Minn. Stat. § 253B.10, confers a liberty interest to certain individuals by, in their interpretation of the statute, "mandating" they be admitted to a state-operated treatment facility within 48 hours of their civil commitment.[3]

Plaintiffs alternatively identify the liberty interest at issue as an "interest in freedom from incarceration and punishment – or incarceration and punishment greater than the term to which they were sentenced." Am. Compl. ¶ 52. But such a claim is puzzling and

---

[3] Again, Defendants dispute Plaintiffs' interpretation of the law—i.e., that the law requires individuals be admitted within 48 hours *of their civil commitment order* rather than 48 hours from the time at which a medically-appropriate bed is available.

nonsensical where they fail to even allege that they are or were residing in a jail or correctional facility under an unlawful confinement order. Chairse was detained in connection with criminal charges by the Hennepin County District Court, which specifically permitted his release either upon posting bail in the amount of $40,000 or with no bail should Chairse comply with multiple conditions including "Attend & complete RX at Anoka Metro Regional Treatment Center, when bed ready as ord. in his civil comm. 27-MH-PR-22-1080." Order, *State v. Chairse*, No. 27-CR-22-18819 (Minn. Dist. Ct. Oct. 24, 2022). Burgess was similarly detained in connection with criminal charges by the Ramsey County District Court, which permitted only a furlough for treatment and specifically required his return upon discharge. Order, *State v. Burgess*, No. 62-CR-22-4976 (Minn. Dist. Ct. Dec. 7, 2022). Neither plaintiff appears to dispute the validity of their confinement orders that caused their detention pending admission to state-operated treatment facilities.

In either formulation of the purported constitutional interest at issue, Plaintiffs have not met the first prerequisite established by *Washington v. Glucksberg*. They have not shown any right that is, "objectively, deeply rooted in this Nation's history and tradition." *Washington*, 521 U.S. at 720-21 (citation omitted). Plaintiffs do not allege anything in "[o]ur Nation's history, legal traditions, and practices" that establishes the right to 48-hour admission as a "fundamental liberty interest." *Id.* Plaintiffs do not even attempt a

discussion on these issues.  For that reason alone, Plaintiffs' substantive due process arguments fail.[4]

**B.    Plaintiffs Have Not Met Their Extraordinarily High Burden To Plausibly Allege a Violation of Substantive Due Process Based On Alleged Violation Of State Law.**

Alternatively, Plaintiffs may intend to argue that Defendants' alleged violation of a state law (i.e., Minn. Stat. § 253B.10) is, in itself, a violation of substantive due process. This claim similarly fails.

"[S]ubstantive due process rights are created only by the Constitution," and, in almost all situations, they cannot be created by state law.  *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring); *see also Lewis v. Brown*, 409 F.3d 1271 (11th Cir. 2005).[5]  As the Eighth Circuit noted, "We have held several times

---

[4] To the extent Plaintiffs intend to assert a fundamental substantive due process right to treatment in an inpatient setting, such a claim also warrants dismissal, as no such right exists in the Eighth Circuit.  *Bailey v. Gardebring*, 940 F.2d 1150, 1153 (8th Cir. 1991) ("We turn first to Bailey's asserted right to treatment. . . [he] simply does not have the constitutional right he claims."); *Elizabeth M. v. Montenez*, 458 F.3d 779, 788 (8th Cir. 2006) ("the Supreme Court has recognized a substantive due process right to reasonably safe custodial conditions, but not a broader due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement."); *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) (same). In *Karsjens v. Piper*, the Eighth Circuit again rejected the theory that there is a "due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement."  845 F.3d 394, 410 (8th Cir. 2017) (quoting *Strutton*, 668 F.3d at 557).  It reiterated that holding in *Karsjens v. Lourey*, 988 F.3d 1047, 1051 (8th Cir.), *cert. denied*, 142 S. Ct. 232 (2021).

[5] This stems from the fundamental notion that "a federal court will not require a state to follow its own law, even though adherence to governing rules is an important ingredient of. . . due process[.]"  *Carson v. Block*, 790 F.2d 562, 565-66 (7th Cir.), *cert. denied*, 479 U.S. 1017 (1986)); *see also Bowers v. City of Flint*, 325 F.3d 758, 766 (6th Cir. 2003) (J. Moore, concurring).  When the source of a duty or obligation is not the U.S. Constitution, but is instead a state law, "federal courts have no rule external to the state's choices to enforce. We have only state law, which states may enforce, alter, or

that a violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983." *Bagley v. Rogerson*, 5 F.3d 325, 328 (8th Cir. 1993) (citation omitted); *see also Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1105 (8th Cir. 1992) ("In other contexts we have unequivocally held that a state-law error, no matter how fundamental, cannot in and of itself create a federal due-process violation.") (citation omitted).  Indeed, even if a violation of state law is done in bad faith, it does not necessarily implicate the Due Process Clause.  *Chesterfield*, 963 F.2d at 1105 (8th Cir. 1992) ("A bad-faith violation of state law remains only a violation of state law."); *WMX Techs., Inc. v. Gasconade Cnty., Mo.*, 105 F.3d 1195, 1200 (8th Cir. 1997) ("A violation of state law remains only a violation of state law. . . and is better addressed to state courts and administrative bodies.").

The *only* way that violations of state law implicate substantive due process rights are when the government's actions are "truly irrational." *Chesterfield*, 963 F.2d at 1105. This is an exceptionally high burden for a plaintiff to meet. As the Eighth Circuit explained in *Azam v. City of Columbia Heights*:

> This Court has repeatedly emphasized the high burden facing a person who claims a violation of his or her Fourteenth Amendment rights.  To demonstrate the government violated a person's substantive-due-process rights, the claimant must show evidence of "a constitutionally protected property interest and that governmental officials used their power in such an arbitrary and oppressive way that it 'shocks the conscience.'"

*Azam v. City of Columbia Heights*, 865 F.3d 980, 986 (8th Cir. 2017) (quoting *Entergy, Ark., Inc. v. Nebraska*, 241 F.3d 979, 991 (8th Cir. 2001)).

---

disregard so far as the Due Process Clause is concerned." *Archie v. City of Racine*, 847 F.2d 1211, 1218 (7th Cir. 1988).

To state a substantive due process claim, a claimant "must allege that a government action was 'sufficiently outrageous' or 'truly irrational, that is, something more than arbitrary, capricious, or in violation of state law.'" *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 628 (8th Cir. 2001) (citation omitted); *see also Chesterfield*, 963 F.2d at 1104. This is because substantive due process "is concerned with violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience." *Golden ex rel. Balch v. Anders*, 324 F.3d 650, 652 (8th Cir. 2003).

Plaintiffs have not alleged, plausibly or otherwise, that Defendants' actions were "truly irrational" or so inspired by malice or sadism as to shock the conscience. The Eighth Circuit has given the following as examples of "truly irrational" government actions: (i) "attempting to apply a zoning ordinance only to persons whose names begin with a letter in the first half of the alphabet" (*Chesterfield*, 963 F.2d at 1104); (ii) a government "fir[ing] an at-will employee because his name starts with 'A,' or because it rained last night" (*Singleton*, 155 F.3d at 989–90); and (iii) "a zoning board's decision made by flipping a coin." (*Lemke v. Cass Cnty., Neb.*, 846 F.2d 469, 472 (8th Cir. 1987) (Arnold, J., concurring)). And the rare cases where courts have found the conscience shocking standard met involve such conduct as "forc[ing] an emetic solution into [a criminal suspect's] stomach against his will" to cause vomiting and recover swallowed evidence." *Rochin v. California*, 342 U.S. 165, 167–72 (1952).

10

Nothing in Plaintiffs' Complaint rises to such a level. Plaintiffs claim only that Defendants did not admit them and the putative class members within a certain amount of prescribed time; they make no arguments as to motives or rationale. Plaintiffs have not plausibly alleged that Defendants' conduct was "truly egregious and extraordinary" in a manner so abusive as to be "offensive to human dignity," as required. *See New v. City of Minneapolis*, 792 F.2d 724, 726 (8th Cir. 1986). And Plaintiffs certainly do not allege conduct that can plausibly be found to "either shock the conscience" or "offend judicial notions of fairness or human dignity." *Riley v. St. Louis County*, 153 F.3d 627, 631 (8th Cir. 1998) (upholding dismissal of substantive due process claim where plaintiff failed to allege government's action was "sufficiently outrageous"). Their substantive due process claims must be dismissed.

## II.   PLAINTIFFS DO NOT ALLEGE A VIOLATION OF PROCEDURAL DUE PROCESS AS ALLEGED IN COUNTS II AND V BECAUSE THEY DO NOT ALLEGE A PROCEDURAL DEPRIVATION.

Plaintiffs also fail to allege a violation of procedural due process. To prove a violation of procedural due process, a plaintiff must show the following elements: (1) a protected life, liberty, or property interest; (2) the deprivation of the same; and (3) the state's failure to provide adequate procedural rights before impinging upon the protected interest. *Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011). Here, Plaintiffs have failed to allege a constitutionally protected liberty interest. But their claim fails for an even more fundamental reason: *it is not a claim about denial of process*. They do not claim that some procedure is lacking before impinging on the interest at issue. They are not seeking a hearing or opportunity to be heard on whether they are entitled to admission to a

11

state-operated treatment facility within 48 hours from civil commitment. No amount of procedure – notices, hearings, process – would change their claim that they are entitled to this substantive outcome.

Therefore, even assuming without conceding that Plaintiffs adequately identified a protected constitutional interest[6], these causes of action must still be dismissed. In *Bagley v. Rogerson*, the Eighth Circuit explained what kinds of procedural due process protections are afforded to interests created by state law: "If a state law gives me the right to a certain outcome in the event of the occurrence of certain facts, I have a right, by virtue of the Fourteenth Amendment, to whatever process is due in connection with the determination of whether those facts exist." *Bagley v. Rogerson*, 5 F.3d 325, 328 (8th Cir.1993). In other words, just because a state law "creates a certain right or entitlement" through mandatory language (including a statute that "is a direct command"), it does not implicate procedural due process if the statute "does not create a certain right or entitlement subject to specified factual findings." *Meis*, 906 F.2d at 368-69. This is a hard limit on

---

[6] Plaintiffs also fail to identify a constitutionally protected liberty interest. "State laws and regulations create a protectable liberty interest only when they (1) place substantive limitations on the exercise of official discretion; and (2) contain explicit mandatory language comprising specific directives to the decision maker that if the regulations' substantive predicate acts are present, a particular outcome must follow." *Williams v. Nix*, 1 F.3d 712, 717 (8th Cir. 1993) (internal citations omitted). Plaintiffs, however, identify no explicit mandatory language as required above. The statute does not, on its face, confer the right to admission to a state-operated treatment facility within forty-eight hours of civil commitment because the statute does not specify when the referenced forty-eight hours should start running. Minn. Stat. § 253B.10. While the statute mandates that admissions of these individuals be prioritized over other admissions, it does not mandate the *particular* outcome that the referenced individuals be admitted to a state-operated treatment facility within forty-eight hours *from the issuance of a commitment order*. *Id.*

federal due process rights provided by state statute; if mandatory language automatically implicated the Due Process Clause, "[s]uch a doctrine would turn every state-law violation into a substantive-due-process claim, a result that would obliterate completely the distinction between state law and the federal Constitution." *Bagley*, 5 F.3d at 328; *see also, Meis*, 906 F.2d at 368-69 (holding that it is "*emphatically not the law*" that the violation of "every state statute which imposes a mandatory duty, or creates a legal right. . . would be a violation of the Due Process Clause of the Fourteenth Amendment.") (emphasis added).[7]

The relevant language of the statute at issue here—the section that Defendants allegedly violated—simply states: "Patients described in this paragraph must be admitted to a state-operated treatment program within 48 hours."   Minn. Stat. § 253B.10, subd. 1(b).[8]   At most, Plaintiffs could argue this means that if a patient meets certain predicate facts, then the patient is entitled to be admitted within forty-eight hours.  *See id*. Procedural due process would only protect the determination of whether a patient meets those predicate facts (i.e., whether they are a patient to whom the priority admission statute applies).  *See Bagley*, 5 F.3d 328.  But Plaintiffs do not allege any dispute as to whether the statute applies to them.  They define their putative classes as comprising individuals to whom the statute applies.  Am. Compl. ¶ 30.  They are therefore not seeking notice or opportunity to be heard on the only predicate fact they allege – whether the priority

---

[7] The Minnesota Supreme Court has consistently refused to recognize causes of action when the language of the statute does not expressly provide one. *See, e.g., Halva v. Minn. State Coll. & Univ.*, 953 N.W.2d 496, 504 (Minn. 2021) (collecting cases).  It would be nonsensical to transform statutory entitlements into constitutional claims where the state legislature has elected *not* to create a cause of action for enforcement.

[8] "Patients described in this paragraph" refers to "patients being admitted from jail or a correctional institution" who meet the criteria in section 253B.10 subd. 1(b)(1)-(4).

13

admission statute applies to them. Instead, they assert entitlement to a particular substantive outcome regardless of any additional procedure provided.

In sum, procedural due process protects not from an alleged substantive deprivation (here, a waiting period prior to admission to a state-operated treatment program) but from the denial of procedures allowing the person to contest the basis for the deprivation of the protected interest. *Carey v. Piphus*, 435 U.S. 247, 259-60 (1978). And "[a] plaintiff who seeks only to stop a challenged practice entirely, rather than to be afforded procedural protections in connection with that practice, does not have a procedural due process claim." *Hough v. Shakopee Pub. Sch.*, 608 F. Supp. 2d 1087, 1112 (D. Minn. 2009); *see also Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998) ("A procedural due process claim focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures."). Because Plaintiffs allege no procedural deprivation, their procedural due process claims must be dismissed.

III. **ALL OF PLAINTIFFS' CONSTITUTIONAL CLAIMS SHOULD OTHERWISE BE DISMISSED AGAINST DEFENDANT HARPSTEAD IN HER INDIVIDUAL CAPACITY.**

To the extent any of the claims discussed above survive, they should be dismissed against Defendant Harpstead in her individual capacity for two reasons.

First, Plaintiffs failed to allege personal involvement by Commissioner Harpstead: "In a civil rights action, the 'plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution.'" *Geiger v. Minn. Dep't of Human Servs.*, Civ. No. 13-2140 (JRT/LIB), 2013 WL 5596599, *3 (D. Minn., Oct. 11, 2013) (quoting *Iqbal*, 556 U.S. at 676)); *Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (affirming dismissal of complaint based on failure to

allege personal involvement by defendants). A defendant's liability cannot be established absent "a causal link to, and direct responsibility for, the deprivation of rights." *Clemons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quotation omitted).

Plaintiffs raise no concrete allegation of Commissioner Harpstead's personal involvement in the allegations raised in the Complaint. At most, she is alleged to have responsibility to ensure DHS and its employees follow the law. Am. Compl. ¶ 20. But allegations of "general responsibility for supervising the operations" of DHS do not "establish [the] personal involvement" necessary to support a claim for deprivation of Constitutional rights. *Ouzts v. Cummins,* 825 F.2d 1276, 1277 (8th Cir. 1987).

Second, Commissioner Harpstead is entitled to qualified immunity because Plaintiffs failed to allege facts that establish that she violated clearly established substantive or procedural due process rights. Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted). Courts consider two factors: "(1) whether the facts alleged or shown, construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful." *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013). Qualified immunity is analyzed by applying an "objective legal reasonableness" standard. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

Here, Commissioner Harpstead is entitled to qualified immunity because the allegations in the Complaint do not show that she acted in a manner that a reasonable person would know violated clearly established constitutional rights.  Plaintiffs do not even allege that a clearly established constitutional right to treatment in a hospital setting within 48 hours of a commitment order being signed exists.[9]

IV.   **TO THE EXTENT THE COURT DOES NOT OTHERWISE DISMISS PLAINTIFFS' DUE PROCESS CLAIMS ARISING FROM THE MINNESOTA CONSTITUTION, IT SHOULD DISMISS ANY REQUESTS FOR DAMAGES UNDER COUNTS IV AND V.**

The Court should dismiss any claims for damages under the Minnesota Constitution. "Minnesota does not have a statutory equivalent to 42 U.S.C. § 1983 allowing a direct cause of action for damages for violations of the Minnesota Constitution." *Redd v. Abla-Reyes*, No. 12-465 (MJD/JSM), 2013 WL 6057860 at *1 (D. Minn. Nov. 15, 2013). Likewise, the Court should dismiss damages claims under the United States Constitution to the extent they are brought against Defendants in their official capacities.  Neither state agencies nor state officials sued in their official capacities are "persons" within the meaning of section 1983 and because the State has not waived its immunity from section 1983 claims, a state and its officers acting in their official capacity may not be sued under section 1983. *Will v. Michigan Dep't of St. Police*, 491 U.S. 58, 70-71 (1989).[10]

---

[9] The state cases upon which Plaintiffs apparently rely cannot clearly establish that Defendants' alleged conduct violated substantive or procedural due process, because those mandamus cases do not involve federal constitutional claims. *See, e.g.,* Order, *Tokvan Ly v. Jodi Harpstead, Minn. Comm'r. of Human Services*, No. 70-CV-22-13781 (Minn. Dist. Ct. Dec. 22, 2022) (Index #65).

[10] An exception to this rule allows section 1983 suits against state officials for prospective *injunctive* relief, which Plaintiffs seek on behalf of Burgess and the putative Awaiting Admission Class.  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

## V.   PLAINTIFFS' STATE LAW TORT CLAIMS MUST BE DISMISSED.

Plaintiffs' state law tort claims must also be dismissed because they are not viable under Minnesota law, and even if they were, Plaintiffs could not overcome Defendants' statutory immunity granted by Minn. Stat. § 253B.23.

### A.   There is No Cause Of Action For Negligence As Alleged In Count III For A State Defendant's Alleged Violations Of Minn. Stat. § 253B.10.

For a tort claim to exist against the government, there must be either an existing common law cause of action or "a stated or implied civil cause of action" created by the legislature. *Bruegger v. Faribault Cnty. Sheriff's Dep't*, 497 N.W.2d 260, 260 (Minn. 1993). To determine whether a common law cause of action exists, a court need only look to see if the alleged duty existed outside of the statute. *Id.* at 262. If such a common law cause of action exists, "a statutory enactment could establish a standard of care in a negligence action." *Id.* If, however, no such common law cause of action exists, then a court can allow tort claims to continue only where the legislature has either "expressly or impliedly create[d] a statutory cause of action." *Id.*

Here, no such common law cause of action exists. Plaintiff has not alleged any common law "duty to admit to hospital setting" or "duty to provide treatment in a hospital setting" in the State of Minnesota. Rather, Plaintiffs base allegations of a duty to admit them to treatment in a hospital setting solely on their reading of section 253B.10, subdivision 1(b). Plaintiffs' negligence claim can therefore exist only if the legislature expressly or impliedly created such a cause of action under chapter 253B. It did not.

Where a duty is first created by statute, as Plaintiffs allege is the case here, civil liability must be provided by the statute for citizens to be able to pursue a tort claim against

the government. *Bruegger*, 497 N.W.2d at 262. Where no such liability is provided by statute, a court cannot allow a cause of action to continue. *Id.* ("Principles of judicial restraint preclude us from creating a new statutory cause of action that does not exist at common law where the legislature has not either by the statute's express terms or by implication provided for civil tort liability."); *see also Halva v. Minn. State Coll. & Univ.*, 953 N.W.2d 496, 504 (Minn. 2021) (collecting cases).

This remains true for claims sounding in negligence per se. Even if the state did violate one of its own statutes, where the statute does not provide a private right of action, there can be no claim for negligence per se. *Hooper v. City of St. Paul*, No. 17-CV-3442 (PJS/DTS), 2019 WL 4015443, at *22 (D. Minn. Aug. 26, 2019).

Chapter 253B does not provide individuals a private right of action for negligence against the State of Minnesota or its agents and employees for alleged violations of Minn. Stat. § 253B.10, subd. 1.[11] Plaintiff's negligence and negligence per se claims must be dismissed.

**B.     Plaintiffs Fail To State A Claim For False Imprisonment As Alleged In Count VI.**

Plaintiffs cannot state a claim for false imprisonment where they do not claim that Defendants detained them or directed their detention, or even that they were detained pursuant to unlawful confinement orders. *See supra* Part I.A.

To state a claim for false imprisonment, a plaintiff must plead "(1) words or acts intended to confine, (2) actual confinement, and (3) awareness by the plaintiff that he is

---

[11] Indeed, as discussed further below, chapter 253B immunizes Defendants who acted in good faith from claims arising under the chapter.

confined." *Blaz v. Molin Concrete Prod. Co.*, 244 N.W.2d 277, 279 (Minn. 1976).  The "intent to confine requires an affirmative act." *Thundercloud v. Schnell*, No. A21-1305, 2022 WL 759745, at *2 (Minn. Ct. App. Mar. 7, 2022), *rev. denied* (May 31, 2022). "[F]ailure to conduct an official [action]" that risks or results in over-incarceration is insufficient as a matter of law to state a claim for false imprisonment.  *Heilman v. Courtney for Minnesota Dep't of Corr.*, No. A17-0863, 2019 WL 4008097, at *2 (Minn. Ct. App. Aug. 26, 2019).  And while a claim of false imprisonment may be based on inducing police to unlawfully confine an individual, liability only occurs in such a case where defendant is claimed "to have instigated an unprivileged confinement" and to have "persuade[d] or command[ed] the police directly to detain [the individual] whom police are not otherwise permitted to detain."  *Jones v. Walgreens Co.*, No. A11-1261, 2012 WL 1658895, at *2 (Minn. Ct. App. May 14, 2012); *see also Heilman*, 2019 WL 4008097, at *3 (a claim for aiding and abetting false imprisonment must fail where "there are no allegations that respondent affirmatively instigated appellant's confinement").

The facts of *Heilman v. Courtney for Minnesota Department of Corrections* illustrate the fatal flaws in Plaintiffs' claim – they do not allege confinement pursuant to an unlawful commitment order and they allege that their confinement occurred due to the Commissioner's *inaction* rather than action.  In *Heilman*, the plaintiff brought a claim for false imprisonment against a Minnesota Department of Corrections employee where the plaintiff's sentence had been miscalculated and he was held beyond his sentence as a result. *Heilman*, 2019 WL 4008097, at *2.  Heilman claimed that "deliberate indifference to his potential over-incarceration" and the defendant's failure to conduct an audit that would

have identified the error were the required affirmative acts intended to confine. *Id.* The Minnesota Court of Appeals rejected the theory of false imprisonment, holding that "there is simply no evidence that appellant could produce consistent with his theory of false imprisonment to warrant relief." *Id.* Allegations of inaction ("failure to conduct" an audit to identify the error) were insufficient to state a claim because "consent to or acquiescence in another's acts for which one is not otherwise responsible cannot be used as a basis for imposition of liability for false imprisonment." *Id.* (citation omitted). Nor could aiding and abetting liability stand as a claim absent an allegation that defendant had "instruct[ed] that the detention occur." *Id.* at *3. The Court of Appeals there also noted that, "[b]eyond lacking an affirmative act, appellant's false-imprisonment claim fails because appellant was confined based upon valid orders," even where the order had been miscalculated. *Id.*

Just as in *Heilman* where a theory of false imprisonment based on inaction was held to fail as a matter of law, Plaintiffs' claims here necessarily fail. Plaintiffs do not claim the Commissioner confined them to a particular area. Such an allegation would be absurd given that the Commissioner does not operate the jail or prison systems where Plaintiffs allege they are or were confined. *See* Minn. Stat. §§ 245.03; 256.01, subd. 2. Instead, Plaintiffs allege that the Commissioner "refus[ed] to admit" them to state-operated treatment facilities and that her actions caused Plaintiffs' confinement to continue. Am. Compl. ¶¶ 11, 66. Plaintiffs allege that this failure to admit is an intentional act sufficient to state a claim for false imprisonment because "Defendant had knowledge of and intentionally disregarded facts that create a high probability of injury to the rights and safety of Plaintiffs." *Id.* ¶¶ 66, 69. But *Heilman* specifically rejects this theory of false

imprisonment based on deliberate indifference and makes clear that a legal theory premised on allegations of inaction, such as a failure to admit or a failure to audit a commitment order, is insufficient as a matter of law to state a claim for false imprisonment.

The claim should be dismissed.

### C.   Plaintiffs Fail To State A Claim For Intentional Infliction Of Emotional Distress Claim As Alleged In Count VII.

Plaintiffs' intentional infliction of emotional distress ("IIED") claim must be dismissed because they fail to adequately allege facts to plausibly support any element of an IIED claim. Those elements include that: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438–39 (Minn. 1983). Plaintiffs allege that Defendants admitted civilly committed individuals to state-operated treatment hospitals more than forty-eight hours after their commitments. It is hard to decipher which element of this conduct Plaintiffs allege is extreme and outrageous. Certainly, a separate entity lawfully detaining Plaintiffs in a jail or correctional institution pending their admission to a state-operated treatment facility could not constitute extreme and outrageous conduct on the part of Defendants. And Plaintiffs do not allege that Defendants have provided them inadequate care upon their admission. They include no allegations about why, in their view, a waitlist for admission to a state-operated treatment facility should be considered "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* (citation omitted). Plaintiffs do recite the elements of the state-law cause of action for IIED, but such "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements" do not state a plausible claim for relief under Rule 12(b)(6).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiffs' IIED claim must be dismissed.

## VI.  PLAINTIFFS' CONSTITUTIONAL AND TORT CLAIMS MUST BE DISMISSED FOR THE INDEPENDENT REASON THAT CHAPTER 253B GRANTS DEFENDANTS STATUTORY IMMUNITY.

Even if Plaintiffs had plausible constitutional or tort claims against Defendants—

which they do not—such claims must be dismissed because Defendants enjoy statutory

immunity for claims brought under chapter 253B.

Minnesota Statutes, section 253B.23, subdivision 4, provides that "All persons

acting in good faith, upon either actual knowledge or information thought by them to be

reliable, who act pursuant to any provision of this chapter or who procedurally or physically

assist in the commitment of any individual. . . are not subject to any civil or criminal

liability under this chapter."  *Id.*  And "[i]f the good-faith immunity statute does apply, it

'provides complete immunity from suit, not simply a defense to liability.'"  *Jackson on*

*behalf of Sorenson v. Options Residential, Inc.*, 896 N.W.2d 549, 553 (Minn. Ct. App.

2017).  There is no dispute that the Commissioner has acted in good faith and that

Plaintiffs' claims arise under the chapter.

Good faith has been defined by Minnesota courts as reflecting "honesty in belief or

purpose."  *In re Est. of Mourning*, No. A21-1241, 2022 WL 1132230, at *4 (Minn. Ct.

App. Apr. 18, 2022); *see also Reimringer v. Anderson*, 960 N.W.2d 684, 690 (Minn. 2021)

("bad faith can be understood as '[d]ishonesty of belief, purpose, or motive.'").  Plaintiffs

do not allege that Defendants acted in bad faith in connection with their administration of

her duties.  *See generally*, Am. Compl.  As discussed below, Defendants interpret the

22

priority admission statute to run from the date when a medically appropriate bed is available—an interpretation that is not only reasonable but supported by the canons of statutory construction. *See infra* Part VII.A. While Plaintiffs may disagree with Defendants' interpretation of the statute and assert their conduct based on that interpretation is extreme and outrageous, Am. Compl. ¶ 71, they nowhere allege dishonestly of belief, purpose, or motive.

The Minnesota Court of Appeals interpreted the phrase "under this chapter," in *Jackson on behalf of Sorenson v. Options Residential, Inc.*, 896 N.W.2d 549 (Minn. Ct. App. 2017), and its discussion there confirms that Plaintiffs' claims here indisputably arise under the chapter. In finding that the plaintiff's claims did not arise under the chapter, the Court of Appeals noted that the plaintiff's "injuries did not result from anyone's failure to satisfy an obligation imposed by the act," that the complaint, "implicates none of the duties or rights established by the act," and the complaint, "includes no allegation requiring the district court to interpret or apply any provision of the act." *Id.* at 556. Plaintiffs here allege that their injuries resulted from the Defendants' failure to satisfy obligations they allege are imposed by statute – not by any independent constitutional or common law right. Plaintiffs' Amended Complaint is premised on duties and rights that they allege are imposed and conferred by statute, and the Amended Complaint requires the Court to interpret section 253B.10, subdivision 1(b). There can be no dispute that all of Plaintiffs' claims arise under the Act. Therefore, absent an allegation of bad faith, which does not exist here, Defendants enjoy statutory immunity under the terms of the Chapter for the claims alleged here. *See also Losen v. Allina Health Sys.*, 767 N.W.2d 703, 711 (Minn. Ct.

App. 2009) (affirming dismissal of negligence claims that arose under the act because permitting such claims would "eviscerate the immunity provision by replacing the 'good faith' standard of the CTA with one of negligence"). All of Plaintiffs' tort and constitutional claims must be dismissed on this independent basis.

## VII.   PLAINTIFFS' PETITION FOR A WRIT OF MANDAMUS SHOULD BE DISMISSED.

At the outset, Defendants note that should the Court issue an alternative writ of mandamus, it would necessarily have to dismiss all of Plaintiffs' claims for which injunctive relief is available. A plaintiff seeking a writ of mandamus must show that there is no "plain, speedy, and adequate remedy in the ordinary course of law." *Madison Equities, Inc. v. Crockarell*, 889 N.W.2d 568, 574 (Minn. 2017) (citing Minn. Stat. § 586.02). Granting a writ of mandamus therefore requires a finding that there exists no adequate remedy at law, meaning that in this case, the Court would have to find that Plaintiffs are unable to state any claims for which injunctive relief could be sought.

But even if the Court properly dismisses all of Plaintiff's other claims, Plaintiffs' petition for a writ of mandamus on behalf of Burgess and the putative Awaiting Admission class should still be dismissed because they fail to identify a sufficiently clear statutory duty for a writ of mandamus to issue.[12]   "Mandamus is an extraordinary remedy."

---

[12] In Minnesota, a respondent to an alternative writ of mandamus may respond by demurrer, which has been replaced in modern civil actions by the motion to dismiss for failure to state a claim upon which relief can be granted. Minn. Stat. § 586.08; Minn. R. Civ. P. 12.02(e); *State by Humphrey v. Baillon Co.*, 503 N.W.2d 799, 803 (Minn. Ct. App. 1993) (holding the civil rules apply to mandamus actions); *Pederson v. Am. Lutheran Church*, 404 N.W.2d 887, 889 (Minn. Ct. App. 1987) (stating that "[t]he demurrer was replaced by the motion to dismiss for failure to state a claim"); *State ex rel. G.M. Gustafson Co. v. Crookston Tr. Co.*, 22 N.W.2d 911, 919 (Minn. 1946). Case law clearly permits a motion to dismiss a mandamus petition. *See N. States Power Co. v. Minn. Metro. Council*,

*Duncan v. Roy*, 830 N.W.2d 48, 51 (Minn. Ct. App. 2013).   Courts may only issue

mandamus relief where: (1) an official fails to exercise "a duty imposed by law"; (2) as a

result, the petitioner is "injured by a public wrong"; and (3) no adequate alternative legal

remedy exists.   *Chanhassen Chiropractic Ctr., P.A. v. City of Chanhassen*,

663 N.W.2d 559, 562 (Minn. Ct. App. 2003) (outlining standing requirements for

obtaining a writ under Minn. Stat. §§ 586.01-.02).   Here, mandamus is not an available

remedy because (1) the priority admission statute is not sufficiently clear to justify

mandamus relief, and (2) Plaintiffs have not alleged, as they must, that the Commissioner

has adequate funding to immediately admit all members of their putative Awaiting

Admission class to DHS treatment facilities.

### A.   The Statutory Duty Is Not Sufficiently Clear To Entitle Plaintiffs To Mandamus.

The priority admission statute does not give rise to a sufficiently clear duty that

would enable the Court to issue a writ.   A district court may issue a writ of mandamus

"only when the petitioner has shown the existence of a legal right to the act demanded

which is so clear and complete as not to admit any reasonable controversy."   *Day v. Wright*

*Cnty.*, 391 N.W.2d 32, 34 (Minn. Ct. App. 1986); *State ex rel. Spurck v. Civil Serv. Bd.*,

32 N.W.2d 583, 586 (Minn. 1948) (holding mandamus may only compel an act that the

law "clearly and positively requires").   Section 253B.10, subdivision 1(b) instructs the

---

684 N.W.2d 485, 490 (Minn. 2004).  Still, Defendants reserve their right to respond, should
an alternative writ issue, and to address any specific requirements to show cause contained
in an alternative writ.

Commissioner to admit a patient "within 48 hours," but it does not specify when that forty-eight hours begins to run and is therefore ambiguous on its face.

Minnesota law permits courts to engage in statutory interpretation designed to "effectuate the intention of the legislature" to determine whether a statute might give rise to such a duty even if the statute is ambiguous. *Christianson v. Henke*, 831 N.W.2d 532, 536 (Minn. 2013); *Johnson v. Minn. Dep't of Hum. Servs.*, 565 N.W.2d 453, 460 (Minn. Ct. App. 1997). In doing so, courts apply the canons of construction to determine a statute's meaning. *Billion v. Comm'r of Revenue*, 827 N.W.2d 773, 777 (Minn. 2013). Here, interpreting the statute to run from the time a medically appropriate bed is available is consistent with the statute as a whole, it is supported by the legislative history, and any other interpretation would lead to an absurd result.

First, this interpretation is consistent with the statute's stated purpose: to "prioritize patients being admitted from jail or a correctional institution." Minn. Stat. § 253B.10, subd. 1(b). Admitting patients from a jail within forty-eight hours of a medically appropriate bed still prioritizes those patients over all those patients who are civilly committed and awaiting admission from locations other than jail, as well as individuals who are in jail but do not meet one of the four criteria in the priority admission statute. This interpretation therefore continues to further the statute's stated purpose. *See* Minn. Stat. § 645.16(4).

Second, in enacting Chapter 253B, the Legislature clearly understood there would be some delay between issuance of a commitment order and the admission of a patient.[13] *See* Minn. Stat. §§ 253B.10, subd. 1(c) (stating that the patient is not under the control and custody of the head of the facility until "[a]fter arrival"), 253B.10, subd. 2(a) (stating that the court may order transport of the patient "[w]hen the patient is about to be placed in a treatment facility"); *see also* Minn. Stat. §§ 253B.18, subd. 1(a) (stating that "[o]nce a patient is admitted to a treatment facility . . . treatment must begin"), 253B.18, subd. 2(a) (stating that a review hearing must be held "within the earlier of 14 days of the court's receipt of the written treatment report, or within 90 days of the date of initial commitment or admission").  Given acknowledgement throughout the statute of the reality of delay between issuance of a commitment order and admission to a state-operated treatment facility, it would be inconsistent to interpret the statute to run from a static date when the time for admission can vary from patient to patient.  *See Hagen*, 963 N.W.2d at 170 (observing statute should not be interpreted in isolation, but that "all provisions in the statute must be read and interpreted as a whole").

Third, it would be nonsensical for the Legislature to pass a statute, but then fail to appropriate sufficient funds for Defendants to administer the statute.  The Minnesota Constitution expressly forbids the spending of any state money without an appropriation by the legislature, and Plaintiffs never alleged that the Legislature appropriated funds necessary to do what is sought in this Petition.  *See* Minn. Const. art. XI, § 1 ("No money

---

[13] Indeed, the Commissioner is not a party to the civil commitment proceeding and therefore only finds out about a commitment once notified by either the county or the commitment court.

shall be paid out of the treasury of this state except in pursuance of an appropriation by law."). "The purpose of this provision in Article XI is to 'prevent the expenditure of the people's money without their consent first had and given.'" *Ninetieth Minn. State Senate v. Dayton*, 903 N.W.2d 609, 620 (Minn. 2017) (quoting *State ex rel. Nelson v. Iverson*, 145 N.W. 607, 608 (Minn. 1914)). If the Legislature intended for the Commissioner to admit all patients civilly committed to her care within forty-eight hours of an order issuing, it would have appropriated sufficient funding for the Commissioner to do so. Minn. Stat. § 645.17(3) (stating "the legislature does not intend to violate the Constitution . . . of this state"). *Cf. Tate v. Teague*, 431 So.2d 1222, 1225 (Ala. 1983) (observing that had the state legislature intended a claimed interpretation of statute, it would have appropriated sufficient funds for that interpretation).

Fourth, had the Legislature wanted the clock to run from the date of commitment, it could have said so; it did not. *See In re Hubbard*, 778 N.W.2d 313, 323 (Minn. 2010) (observing that the "legislature knows how to" accomplish a particular result "if it desires"). Indeed, legislative history indicates that the original draft of the legislation included a specific time for when the forty-eight hours began to run. *See* S.F. 647, 88th Legis. § 2 (as introduced, Mar. 18, 2013) ("Notwithstanding any law to the contrary, a person confined in a correctional facility or jail who is civilly committed to a treatment facility with an appropriate level of security by court order must be placed in that facility within 48 hours *of the date of commitment*." (emphasis added)). But, the Legislature excluded that language from the final statute. Minn. Stat. § 645.16(7) (stating contemporaneous legislative history may be used to determine legislative intent).

Fifth, interpreting the priority admission statute to run from the date a medically appropriate bed is available avoids an absurd result.  Minn. Stat. § 645.17(1) (stating the Legislature does not intend a result that is absurd).  Any other interpretation would lead to the illogical situation where the Commissioner must admit not just one patient, but every patient waiting for a medically appropriate bed, to a state-operated treatment facility, even if there is no treatment facility available for those patients to go to.  This result is not just illogical, it is impossible and dangerous.  Minn. Stat. § 645.17(1) (stating the legislature does not intend a result that is "impossible of execution").

Because the statutory duty is not sufficiently clear, Plaintiffs' mandamus petition must be dismissed as a matter of law.

### B.   Mandamus Cannot Be Granted Where Plaintiffs Have Not Alleged That Defendants Have Adequate Funds To Accomplish The Relief They Seek.

A writ of mandamus "will be denied where it is obvious that it will prove to be futile, unavailing, and ineffective."  *Winnetka Partners Ltd. P'ship v. Cnty. of Hennepin*, 538 N.W.2d 912, 915 (Minn. 1995); 52 Am. Jur. 2d Mandamus § 20 ("Mandamus will not issue if the performance of the requested action is impossible, meaning an act which cannot be done, whether for lack of funds or lack of physical or mental power.").

Importantly, a court cannot order a government official, through mandamus, to expend funds that have not been appropriated for that purpose.  Lack of available funding is a complete defense to a petition for a writ of mandamus.  *Powell v. Carlos Twp.*, 225 N.W. 296, 297 (Minn. 1929) (stating that a government entity "cannot be required to proceed if it has no funds," and that "[i]t must appear that it has funds").  And the inability to accomplish the task sought in the writ due to of a lack of funds is not merely a defense;

rather, "the nature of the writ of mandamus justifies a holding that it must appear by the writ that there are funds." *Id.* (affirming dismissal of writ for failing to state a cause of action when the petition contained no allegation that funds were available to the government entity to accomplish the task it sought to compel); *see also State ex rel. Traeger v. Carleton*, 64 N.W.2d 776, 779 (Minn. 1954) ("Before [mandamus] is issued to compel a municipal corporation to act in a matter of this kind, it must appear from the writ that the municipality has the funds with which to proceed."). Here, Plaintiffs have not alleged that Defendants have adequate funding to admit members of the putative Awaiting Admission class to a state-operated treatment facility within 48 hours of their civil commitment. Absent allegations of these requisite facts, Plaintiffs' mandamus petition must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask the Court to dismiss Plaintiffs' Complaint in its entirety with prejudice.

Dated: April 10, 2023                    Respectfully submitted,

                                         KEITH ELLISON
                                         Attorney General
                                         State of Minnesota

                                         **s/ Sarah Doktori**
                                         SCOTT H. IKEDA
                                         Assistant Attorney General
                                         Atty. Reg. No. 0386771

                                         SARAH DOKTORI
                                         Assistant Attorney General
                                         Atty. Reg. No. 0403060

30

AARON WINTER
Assistant Attorney General
Atty. Reg. No. 0390914

BRANDON BOESE
Assistant Attorney General
Atty. Reg. No. 0396385

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 583-6694 (Voice)
(651) 282-5832 (Fax)
scott.ikeda@ag.state.mn.us
sarah.doktori@ag.state.mn.us
aaron.winter@ag.state.mn.us
brandon.boese@ag.state.mn.us

*Attorneys for Defendants*

|#5472339-v1