## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| O'Shea Chairse, et al., | Court File No. 23-cv-355 (ECT/ECW) |
| **Plaintiff,** | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| vs. | |
| State of Minnesota Department of Human Services, et al., | |
| **Defendants.** | |

## STATEMENT OF FACTS[1]

This suit challenges the failure of the State of Minnesota Department of Human Services ("DHS") to comply with Minn. Stat. § 253B.10, subd. 1(b), which requires DHS to transfer civilly committed inmates to a state-operated treatment facility within 48 hours of their civil commitment. There are more than 60 inmates who have been waiting weeks or even months to be transferred to a state-run treatment facility following their civil commitment. Additional individuals were previously harmed and/or will be harmed in the future by DHS's failure to transfer them to a state-operated treatment facility within 48 hours of their civil commitment.

A 2016 report from the Office of the Legislative Auditor warned about violations of Minn. Stat. § 253B.10. The report found the availability of "secure inpatient beds" was "inadequate" to meet demand in 2016. The same report stated that "delays in placing

---

[1] All of the facts recited below are obtained, mostly verbatim, from Plaintiffs' First Amended Class Action Complaint (Doc. No. 12), which was filed on March 7, 2023.

individuals into treatment . . . may have increased county jails' risks, potentially affecting the health or safety of the patient, fellow jail inmates, and jail staff."

In September 2022, Scott County Judge Christopher Wilton said, referring to Minn. Stat. § 253B.10, "I've never seen a statute where there's just overt failure to comply, and it's not even close." In an October 26, 2022 order, Scott County Judge Colleen King concluded that the "law requires that within 48-hours of commitment, the committed person must be placed by the Commissioner of Human Services in a state-operated treatment facility." Judge King made the following additional findings:

- "The Commissioner of Human Services has violated the 48-hour rule in Scott County cases since at least the spring of 2021 . . . . Since that time, at least 4 individuals have been committed in Scott County under circumstances where the 48-hour rule would apply, and in each of those cases, the committed person was not transferred out of the jail for treatment within, or even close to, 48-hours."

- "The Scott County Jail is not a treatment facility."

- "Petitioner has been denied necessary care for his mental illness while in the jail. The petitioner has thus been denied due process under the United States and Minnesota Constitutions."

- "The Commissioner of Human Services has failed to comply with a duty imposed by law necessitating judicial intervention and oversight. The 48-hour rule found in M.S.A. §253B.10, subd. 1 creates a clear and unequivocal legal duty for the Commissioner to place the Petitioner in a state-operated treatment

program within 48-hours of his commitment . . . . There is no exception [to] that 48-hour rule under Minnesota law."

- "The Commissioner has been aware that compliance with the 48-hour rule is required and has had ample time to comply given that this issue was identified in 2016 in a report from the Office of the Legislative Auditor."

In November 2022, Scott County Judge Colleen King said, "There are countless . . . individuals who are languishing in jails because the issue has not been addressed. Wrongful incarceration is not the United States of America."

The situation in Scott County described by Judge King is not unique to Scott County, but reflects a pattern occurring throughout the State of Minnesota. In a December 21, 2022 order, Scott County Judge Christian Wilton commanded Minnesota Commissioner of Human Services Jodi Harpstead "to provide the Court with 30-day reports concerning all cases in the State of Minnesota to which the 48-hour rule applies, identifying the originating County and the time and date that the 48-hour period would have expired for each patient." DHS appealed Judge Wilton's December 21, 2022 order, arguing that Judge Wilton does not have the authority to require Commissioner Jodi Harpstead to submit monthly reports about her efforts to comply with Minn. Stat. § 253B.10. On behalf of themselves and a class of similarly situated persons, Plaintiffs O'Shea Chairse and Sean Burgess file this action for injunctive and/or monetary relief under 42 U.S.C. §§ 1983 and 1988, the Minnesota Constitution, and the common law of Minnesota. Plaintiffs seek recovery of damages and an alternative writ of mandamus to compel Defendants' compliance with the law.

3

On or about October 17, 2022, Plaintiff O'Shea Chairse was civilly committed as a person who posed a risk of harm due to a mental illness and a chemically dependent person to the Commissioner of Human Services. However, the Commissioner of Human Services did not transfer Plaintiff Chairse to a state-run facility within 48 hours of his civil commitment. Instead, he remained incarcerated at the Hennepin County Jail until December 5, 2022, when his caseworker was able to have him admitted into New Way Treatment Center. During his time in Hennepin County Jail, he was denied his mental health medications and was kept in a suicide unit where he was only allowed out of his cell for short periods to shower or use the telephone.

On or about November 9, 2022, Plaintiff Burgess was civilly committed. However, the Commissioner of Human Services did not transfer Plaintiff Burgess to a state-run facility within 48 hours of his civil commitment on or about November 9, 2022. Instead, he remained in the Ramsey County Adult Detention Center for at least 27 days,[2] at which point he was admitted into a treatment center. However, Plaintiff Burgess became sick with COVID-19 while at the drug treatment center and was removed from the center for related reasons, and later returned to the Ramsey County Adult Detention Center, where he was incarcerated (and not transferred to a state-run facility) for weeks.[3]

---

[2] Plaintiffs are in the process of confirming an accurate date for Mr. Burgess's initial transfer. The Complaint alleges, based on information that was available at the time, that he was initially transferred in early February, 2023, but there are some additional records now available indicating that Mr. Burgess may have been initially transferred on December 6, 2022. Despite this discrepancy, Mr. Burgess was held in Ramsey County Jail for at least 27 days and well past 48 hours following his civil commitment.
[3] Mr. Burgess was transferred to a treatment facility again on or about April 24, 2023.

Plaintiffs and others similarly situated suffered unlawful incarceration, lack of access to mental health therapy and treatment, use of force, diminished quality and enjoyment of life, and psychological trauma and distress due to Defendants' actions and omissions. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23. Defendants have filed a motion to dismiss this action for failure to state a claim. As explained below, Defendants' arguments lack merit and their motion should be denied.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6), allows defendants to file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted prior to filing an answer or responsive pleading. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden*, 588 N.W.2d at 594. However, "[a]sking for plausible grounds . . . does not impose a probability requirement at the pleading stage." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Rather, it simply calls for sufficient facts to raise a reasonable expectation that discovery will reveal evidence of illegal conduct. *See id.*

A complaint states a plausible claim for relief if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. In determining whether a complaint meets this standard, the reviewing court must take the plaintiff's factual allegations as true. *Id.* at 1949-50; *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996). In addition, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594; *see also Pittman v. Jesson*, 12-cv-1410 (SRN/TNL), 2014 WL 4954286, at *13 (D. Minn. Sept. 30, 2014) ("The Court must read Plaintiff's Complaint as a whole 'to determine whether each allegation, in isolation, is plausible.'" Evaluation of a complaint on a Rule 12(b)(6) motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. "[D]ismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hafley*, 90 F.3d at 266 (internal quotations omitted). Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## ARGUMENT

**I.   PLAINTIFFS' COMPLAINT (COUNTS 1 AND 4) SUFFICIENTLY STATES A FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM UNDER THE UNITED STATES AND MINNESOTA CONSTITUTIONS.**

The Fourteenth Amendment to the United States Constitution states, in relevant part, "[N]or shall any state deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. The Fourteenth Amendment guarantees "[s]ubstantive due process[, which] prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Weiler v. Purkett,* 137 F.3d 1047, 1051 (8th Cir.1998) (en banc); *see also Moran v. Clarke*, 296 F.3d 638, 643 (8th Cir. 2002). The due process protections provided under the Minnesota constitution are "identical to the due process guaranteed under the Constitution of the United States." *State v. Holloway*, 916 N.W.2d 338, 344 (Minn. 2018) (internal quotation omitted).

"[A] person's liberty is protected from unlawful state deprivation by the due process clause of the Fourteenth Amendment." *Slone v. Herman*, 983 F.2d 107, 110 (8th Cir. 1993) "Generally, prolonged detention beyond the term authorized by law unlawfully deprives a prisoner of rights protected under the due process clause of the Fourteenth Amendment." *Russel v. Hennepin County*, 420 F.3d 841, 846 (8th Cir. 2005) (citing *Slone,* 983 F.2d at 110). "To establish a substantive due process violation, the plaintiff must demonstrate that a fundamental right was violated and that the defendant's conduct shocks the conscience." *Stockley v. Joyce*, 963 F.3d 809, 818 (8th Cir. 2020)

(internal quotation omitted). A right is fundamental if it is, objectively, "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997).

In *Davis v. Hall*, the Eighth Circuit explained that the "shocks the conscience" standard is a flexible and fact-specific approach. 375 F.3d 703, 718 (8th Cir. 2004). "The Supreme Court has taken a context[-]specific approach to determining whether intermediate culpable states of mind, such as recklessness, support a section 1983 claim by shocking the conscience and, thus, violating due process." *Id.* (quoting *Wilson v. Lawrence County*, 260 F.3d 946, 956 (8th Cir. 2001)). In *Davis*, the Eighth Circuit determined that deliberate indifference is the appropriate standard for determining constitutional liability in cases involving prolonged detention beyond the term authorized by law. *See* 375 F.3d at 718.

Defendants' argument that Plaintiffs do not have a constitutionally-recognized liberty interest to be transferred to a treatment facility within 48 hours is without merit. First, the Court should recognize that the purpose and intent behind section 253B.10, subd. 1(b), is to free mentally ill and incompetent individuals from incarceration/confinement and get them into a treatment facility where they can receive mental health treatment within 48 hours. Thus, the "right" at issue is not just a right to be transferred, as Defendants argue, but a right to be freed from incarceration/confinement and receive mental health treatment.

In *Youngberg v. Romeo*, the Supreme Court recognized a substantive liberty interest in freedom from bodily restraint: "Indeed, liberty from bodily restraint always

has been recognized as the core of the liberty protected by the Due Process clause from arbitrary government action." 457 U.S. 307, 316 (1982) (internal quotations and alterations omitted).   And, almost 100 years prior, the Supreme Court explicitly recognized that freedom from incarceration is a constitutionally-protected liberty interest: "The 'liberty' mentioned in [the Fourteenth Amendment] means, not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties." *Allgeyer v. Louisiana*, 165 U.S. 578, 589 (1897); *see also Ingraham v. Wright*, 430 U.S. 651, 673 (1977) ("The Due Process Clause . . . was intended to give Americans . . . protection against governmental power . . . .   Among the historic liberties protected was a right to be free from and to obtain judicial relief, for unjustified intrusions on personal security."). The Eighth Circuit likewise recognizes a constitutionally-protected liberty interest in freedom from unlawful incarceration. *See Russel*, 420 F.3d at 846 ("Generally, prolonged detention beyond the term authorized by law unlawfully deprives a prisoner of rights protected under the due process clause of the Fourteenth Amendment.").

In *Vitek v. Jones*, the U.S. Supreme Court held that a state statute that establishes a certain right as applied to incarcerated individuals creates a liberty interest protected by the Due Process Clause. 445 U.S. 480, 488 (1980). "Once a State has granted prisoners a liberty interest, we held that due process protections are necessary 'to insure that the state-created right is not arbitrarily abrogated.'" *Id.* (quoting *Wolf v. McDonnell*, 418 U.S. 539 557 (1974)). Such liberty interests stemming from state statues have been recognized

with respect to "special parole restrictions," "revocation of probation," and "solitary confinement." *Id.* (internal quotations omitted). The specific issue in *Vitek* was whether a Nebraska state statute requiring transfer of inmates to a state hospital for purposes of mental health treatment after a determination of medical necessity created a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *Id.* at 480. Consistent with prior precedent as referenced above, *Vitek* held that the Nebraska statute at issue did, in fact, create a due process liberty interest that was enforceable through the Fourteenth Amendment. *Id.* at 481.

Applying these principles to the present case, the question is (1) whether Minn. Stat. § 253B.10 creates a due process liberty interest and (2) whether Plaintiff's Complaint sufficiently pleads a substantive deprivation of that liberty interest. Section 253B.10, subd. 1(b), states as follows: "Patients [civilly committed as] described in this paragraph must be admitted to a state-operated treatment program within 48 hours." Similar to the state statutes described in *Vitek*, section 253B.10, subd. 1(b) creates (1) a constitutional liberty interest for civilly committed individuals to be transferred to a state-operated treatment program within 48 hours of commitment and (2) a constitutional obligation requiring DHS to transfer such civilly committed individuals within 48 hours as directed in the statute. *See Vitek*, 445 U.S. at 481, 488-91. Just like the plaintiff in *Vitek*, Mr. Chairse, Mr. Burgess, and other similarly-situated civilly committed individuals described in the Complaint have both a "right [and] justifiable expectation," stemming directly from section 253B.10, subd. 1(b), to be transferred to a treatment facility within 48 hours of their civil commitment. *See id.* at 489. Accordingly, Plaintiff's

complaint sufficiently establishes that Plaintiffs have a constitutional liberty interest to be transferred to a state-operated treatment facility within 48 hours of their civil commitment.

As noted above, "prolonged detention beyond the term authorized by law unlawfully deprives [an inmate] of rights protected under the due process clause of the Fourteenth Amendment." *Russel*, 420 F.3d at 846 (citing *Slone*, 983 F.2d at 110). Where the plaintiff alleges that he was unlawfully detained as an inmate in violation of his right to substantive due process of law, the plaintiff must present some evidence showing that the defendants were deliberately indifferent to the violation of his liberty interest. *Davis*, 375 F.3d at 718. Such evidence may include the duration of the unlawful incarceration, the nature and frequency of the protests, the defendants' knowledge or awareness of the unlawful incarceration, and the defendants' failure to act or investigate plaintiff's claims of unlawful incarceration. *Id.* at 719. "Whether the defendants' conduct constituted deliberate indifference is a classic issue for the fact finder." *Id.* (internal quotations omitted).

In the present case, the Complaint alleges that Mr. Chairse and Mr. Burgess were both incarcerated in a county jail for weeks after their respective civil commitments. Mr. Chairse was incarcerated in Hennepin County Jail from October 17, 2022 (his commitment date) until December 5, 2022, at which point he was transferred to a treatment center. Mr. Burgess was civilly committed on November 9, 2022, and remained incarcerated at Ramsey County Jail for at least 27 days. The Complaint sufficiently alleges that multiple other civilly committed individuals similarly-situated to Mr. Chairse

and Mr. Burgess have been, and continue to be, incarcerated in various Minnesota prisons or county jails for weeks and months after their civil commitment, well beyond the 48 hours permitted by section 253B.10, subd. 1(b). Finally, the Complaint sufficiently alleges that the Defendants have been on notice of this civil commitment crisis for years, dating back to at least 2016 when the Office of the Legislative Auditor issued a report documenting the violations of the 48-hour rule as well as the risks associated with these violations. The fact that the Defendants have failed to take action and have allowed this crisis to continue for several years after 2016 demonstrates both knowledge and deliberate indifference towards the liberty interests of mentally ill individuals, such as the Plaintiffs, who are left to linger and suffer in county jails instead of receiving mental health treatment as required under Minnesota state law. Thus, Plaintiffs' Complaint sufficiently pleads a substantive due process claim under both the United States and Minnesota Constitutions.

## II.   PLAINTIFFS' COMPLAINT (COUNTS 2 AND 5) SUFFICIENTLY STATES A FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM UNDER THE UNITED STATES AND MINNESOTA CONSTITUTIONS.

"Due process is a flexible concept, requiring only 'such procedural protections as the particular situation demands.'" *Clark v. Kan. City Mo. Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)). "To set forth a procedural due process violation, a plaintiff, first, must establish that [their] protected liberty or property interest is at stake." *Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 817 (8th Cir. 2011) (quotation omitted). "Second, the plaintiff must prove that the

defendant deprived [them] of such an interest without due process of law." *Id.* Protected liberty interests may arise from two sources—the Due Process Clause itself and the laws of the States. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

If a plaintiff is deprived of a protected liberty interest, the Court must then balance (1) the liberty interest at stake, (2) the risk of an erroneous deprivation of such interest through the procedures used, and (3) the government's interest in providing the process that it did, including the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335. The exact requirements for a process to constitute sufficient due process are flexible and specific to each particular situation. *Senty-Haugen v. Goodno*, 462 F.3d 876, 887-88 (8th Cir. 2006). The most important mechanism for evaluating the process is whether the aggrieved party received notice of the factual bases for the deprivation of the right and a fair opportunity to rebut the decision. *Id.* at 888.

In the present case, Plaintiff's have already established, through arguments set forth in Section I above, that they have a protected liberty interest, arising from section 253B.10, subd. 1(b), to be transferred to a treatment facility within 48 hours of their civil commitment. As to the element of the "procedure" provided by the Defendants to justify the delay, the Complaint sufficiently establishes that there is no such "procedure" in place and that civilly committed individuals such as Mr. Chairse and Mr. Burgess are simply left behind in various county jails until Defendants decide to transfer them. While Plaintiffs understand that the Defendants' failure to follow the statute is driven by financial restraints and lack of available staff and facilities, Defendants' financial

restraints are not the sole consideration. Instead, the Constitution requires a balancing between the liberty interest at stake, the risk of erroneous deprivation of the liberty interest through the procedure used, and the government's interest in providing the procedure that it did. *See Matthews*, 424 U.S. at 355.

Here, the Plaintiffs' interest in being released from unlawful incarceration, coupled with their interest in receiving mental health treatment as mandated by Minnesota state law, outweighs the government's interest in locating available placement while unlawfully incarcerating Plaintiffs in county jails. *See Rud v. Johnston*, 23-cv-0486 (JRT/LIB), 2023 WL 2600206, at *7 (D. Minn. Mar. 22, 2023) (finding a procedural due process violation in a very similar case involving DHS's failure to timely transfer MSOP clients to lower security facilities in violation of Minnesota statutes). As already noted above, the due process protections provided under the Minnesota constitution are "identical to the due process guaranteed under the Constitution of the United States." *Holloway*, 916 N.W.2d at 344 (internal quotation omitted). Thus, Plaintiffs' complaint sufficiently pleads a procedural due process claim under the United States and Minnesota Constitutions.

### III. PLAINTIFFS' COMPLAINT (COUNTS 3, 6, AND 7) SUFFICIENTLY STATES CLAIMS FOR NEGLIGENCE, FALSE IMPRISONMENT, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER MINNESOTA STATE LAW.

#### A. Negligence and Negligence Per Se (Count 3).

Under Minnesota state law, the essential elements of a negligence claim are as follows: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury was sustained; and (4) breach of the duty was the proximate cause of the injury. *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995). "It is well settled under Minnesota law that breach of a statute gives rise to negligence per se if the persons harmed by that violation are within the intended protection of the statute and the harm suffered is of the type the legislation was intended to prevent." *Alderman's Inc. v. Shanks*, 536 N.W.2d 4, 8 (Minn. 1995). "[T]he general rule is that violation of a statute which imposes a standard of conduct designed to protect the party injured is negligence per se unless the statute or ordinance designates that a breach is only prima facie evidence of negligence." *Id.*

In the present case, section 253B.10, subd. 1(b) creates a statutory duty for DHS to transfer Plaintiffs to a treatment facility within 48 hours of their civil commitment. The Complaint sufficiently pleads that DHS has failed to transfer Mr. Chairse, Mr. Burgess, and many other civilly committed individuals to treatment facilities within 48 hours as mandated by the statute. The named Plaintiffs and other similarly situated civilly committed individuals who were incarcerated in prisons or county jails for more than 48 hours after their civil commitment are certainly within the intended protection of section 253B.10, subd. 1(b). Finally, the harm suffered – unlawful incarceration, lack of access to

mental health treatment, and physical and emotional trauma stemming from lack of access to mental health care in correctional facilities – is precisely the type of harm section 253B.10, subd. 1(b) was intended to prevent. Thus, Count 3 of the Complaint sufficiently states a claim for negligence and negligence per se under Minnesota state law.

### B. False Imprisonment (Count 6).

The elements of the tort of "false imprisonment" are as follows: "(1) words or acts intended to confine, (2) actual confinement, and (3) awareness by the plaintiff that he is confined." *Blaz v. Molin Concrete Products Co.*, 244 N.W.2d 277, 279 (Minn. 1976); *see also Peterson v. Sorlien*, 299 N.W.2d 123, 133 (Minn. 1980) (Wahl, J., dissenting in part and concurring in part). "The element of confinement is satisfied if the plaintiff is compelled to go where he does not wish to go." *Blaz*, 244 N.W.2d at 279. "Any imprisonment 'which is not legally justifiable' is false imprisonment." *Sorlien*, 299 N.W.2d at 133 (citing *Kleidon v. Glascock*, 10 N.W.2d 394, 397 (1943)). "[T]herefore, the fact that the tortfeasor acted in good faith is no defense to a charge of false imprisonment." *Id.* "The common law of false imprisonment reflects the general understanding that an individual may not, without legal justification, be confined against . . . his will." *Gleason v. Metropolitan Council*, 563 N.W.2d 309, 319 (Minn. Ct. App. 1997).

In the present case, Plaintiffs' Complaint sufficiently pleads a claim for false imprisonment. First, the Complaint references section 253B.10, subd. 1(b), which required Defendants to transfer Plaintiffs from prison or jail confinement to a treatment

facility within 48 hours of their civil commitment. Second, the Complaint identifies Mr. Chairse, Mr. Burgess, and other similarly situated civilly committed individuals whom DHS failed to transfer within 48 hours as required under state law. Mr. Chairse was imprisoned in Hennepin County Jail for approximately seven weeks after he was civilly committed; Mr. Burgess was imprisoned in Ramsey County Jail for at least 27 days after he was civilly committed; and the Complaint identifies a class of other similarly-situated civilly committed individuals across the state whom Defendants have confined and/or continue to confine in correctional facilities past 48 hours of their civil commitment. The Complaint sufficiently alleges that Plaintiffs were actually confined in a county jail or prison instead of being released to treatment and that Plaintiffs understood that they were being unlawfully confined.

Defendants' arguments with respect to this claim rest largely on an unpublished opinion in *Heilman v. Courtney*, No. A17-0863, 2019 WL 4008097 (Minn. Ct. App. Aug. 26, 2019). In that case, the court held that a "claim premised on a failure to conduct an official inspection based on a 'risk' of over-incarceration" was not sufficient to establish a claim for false imprisonment. *Id.* at *2. *Heilman* additionally found that the false imprisonment claim failed because the plaintiff "was confined based upon valid orders." *Id.* at *3. The present case is easily distinguishable because it is based not on a failure to conduct an audit but instead on failure to carry out a ministerial duty mandated by state law. Furthermore, contrary to the valid orders that supported incarceration in *Heilman*, this case is based on valid court orders and a clear statute which mandated *release* from incarceration. These facts demonstrate that *Heilman* is distinguishable and does not

17

support Defendants' legal arguments. Accordingly, Count 6 of the Complaint sufficiently states a claim for false imprisonment under Minnesota state law.

### C.   Intentional Infliction of Emotional Distress (Count 7).

To recover on an intentional-infliction-of-emotional-distress (IIED) claim, a plaintiff must establish four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 438–39 (Minn. 1983). Extreme and outrageous conduct is conduct that is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* at 439 (quotation omitted). And the distress inflicted must be so severe "that no reasonable [person] could be expected to endure it." *Id.* (quotation omitted).

In the present case, Plaintiffs' complaint sufficiently pleads each of the elements of an IIED claim. First, Defendants' conduct at issue in this case is extreme, outrageous, and reckless. As outlined in the Complaint, the delays in transferring Plaintiffs from jail confinement into treatment were not isolated incidents but are instead part of an ongoing and persistent pattern that has been continuing for years. DHS has been on notice of this pattern since at least 2016 when the Office of the Legislative Auditor issued a report documenting the violations of the 48-hour rule as well as the risks associated with these violations. And the period of delays has been routinely substantial – Mr. Chairse and Mr. Burgess, who experienced what is considered a typical delay, were incarcerated for approximately 7 weeks and at least 27 days respectively during a period when they were civilly committed and in need of mental health treatment. The period of delays (weeks

and months and not mere days), coupled with the fact that Defendants have been on notice of this problem for years and have refused to fix it, sufficiently establishes that Defendants' conduct is extreme, outrageous, and reckless. Finally, the Complaint sufficiently pleads that Plaintiffs have experienced severe emotional distress resulting from Defendants' unlawful confinement. (See Compl., Doc. No. 12, ¶¶ 28, 70-75.) In sum, Count 7 of the Complaint sufficiently states a claim for IIED under Minnesota state law.

## IV.   PLAINTIFFS' COMPLAINT SUFFICIENTLY STATES AN INDIVIDUAL CAPACITY CLAIM AGAINST COMMISSIONER HARPSTEAD.

Defendants argue that Commissioner Harpstead cannot be held liable in this case in her individual capacity. As explained below, this argument is without merit because the Commissioner can be held liable under the theory of supervisory liability.

"[N]either municipalities nor government officials may be held liable for unconstitutional conduct under a theory of respondeat superior." *Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. There are two ways for a plaintiff to show that a supervisor's "own individual actions" violated the plaintiff's constitutional rights. First, a supervisor can be held liable "if he directly participated in the constitutional violation" committed by someone he supervised. *See Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citation omitted).

Second, a supervisor can be held liable "if his failure to train or supervise the offending actor caused the deprivation." *Id.*

In the present case, the Complaint pleads sufficient facts to establish liability against Commissioner Harpstead under both theories. First, as noted above, DHS has been on notice regarding its failure to comply with the 48-hour rule and the associated harm and risks since at least 2016. While Plaintiffs do not allege that Commissioner Harpstead personally interfered with or denied their timely transfers, the facts pled in the complaint are sufficient to establish that Commissioner Harpstead has personally chosen the option of inaction despite being put on notice of the growing civil commitment crisis. In addition, the Complaint contains sufficient facts to plausibly establish that Commissioner Harpstead has failed to take action to properly train and supervise DHS staff to ensure that civilly committed individuals are timely transferred for treatment under section 253B.10, subd. 1(b).

Finally, Commissioner Harpstead is not entitled to qualified immunity because the Plaintiffs' right to a transfer within 48 hours of civil commitment is clearly established by the unambiguous text of section 253B.10, subd. 1(b): "Patients [civilly committed as] described in this paragraph **must** be admitted to a state-operated treatment program within 48 hours." (emphasis added). *See Vitek*, 445 U.S. at 488 (clearly establishing that inmates have a liberty interest in statutory protections pertaining to their transfer to other facilities); *McDeid v. Johnston*, 984 N.W.2d 864, 871-79 (Minn. 2023) (finding that unambiguous court orders and statutory mandates are sufficient to clearly establish a liberty interest in a timely transfer for civilly committed individuals). Accordingly,

Plaintiffs' claims against Commissioner Harpstead in her individual capacity should be permitted to proceed.

## V.     DEFENDANTS ARE NOT ENTITLED TO STATUTORY IMMUNITY.

Defendants argue that they are entitled to statutory immunity under Minn. Stat. § 253B.23, subd. 4. At the outset, Minnesota state statutes do not shield Defendants from liability for federal constitutional violations and, even if the Court determines that statutory immunity applies, Plaintiffs' federal claims should still be allowed to proceed. In any event, statutory immunity does not apply under the facts presented in this case even as applied to Plaintiffs' state tort claims.

Section 253B.23, subd. 4, provides immunity to persons "acting in good faith, upon either actual knowledge or information thought by them to be reliable." But the facts alleged in the Complaint squarely contradict Defendants' assertion that they were acting in good faith. In fact, the Complaint alleges that Defendants were put on notice of the widespread and ongoing violations of the 48-hour rule back in 2016 and, since that period, Defendants have not taken any action to address these violations. The Complaint alleges that there are dozens of civilly committed individuals whose transfers are routinely delayed by weeks or months, yet the Defendants have failed to act to remedy the situation. In fact, the only "information [known] . . . to be reliable" in this case is the plain and unambiguous text of section 253B.10, subd. 1(b), and the Defendants' blatant violation and disregard for the statutory mandate. Accordingly, based on the facts alleged in the Complaint, Defendants are not entitled to statutory immunity under section 253B.23, subd. 4.

## VI.   DISMISSAL OF PLAINTIFFS' CLAIM FOR ALTERNATIVE WRIT OF MANDAMUS (COUNT 8) IS PREMATURE.

"Mandamus is an extraordinary remedy." *N. States Power Co. v. Minn. Metro. Council*, 684 N.W.2d 485, 491 (Minn. 2004) (citing *State v. Pero*, 590 N.W.2d 319, 323 (Minn. 1999)). A writ of mandamus may issue "to compel the performance of an act which the law specially enjoins as a duty," but not to "control judicial discretion." Minn. Stat. § 586.01 (2016). Further, a writ of mandamus "shall not issue in any case where there is a plain, speedy, and adequate remedy in the ordinary course of law." Minn. Stat. § 586.02 (2016).

In the present case, Plaintiffs seek damages and injunctive relief pursuant to several legal theories as set forth in Counts 1-7. Plaintiffs also seek an alternative writ of mandamus pursuant to Count 8. As outlined in detail above, section 253B.10, subd. 1(b) mandates Defendants to perform an explicitly defined duty, which is to transfer certain civilly-committed individuals to a treatment center within 48 hours of their civil commitment. Given this direct statutory directive, Defendants' argument that section 253B.10, subd. 3 "is not sufficiently clear" is without merit. If Plaintiffs have no legal remedies and cannot accomplish any relief pursuant to Counts 1-7, as advocated by Defendants, then a writ of mandamus is precisely the remedy that can be used to compel Defendants' compliance with the statutory mandate. Alternatively, if the Court allows some or all of Counts 1-7 to proceed, there is a possibility of dismissal later in the proceedings on summary judgment, at which point a writ of mandamus may once again

become the sole remaining remedy. For all of these reasons, dismissal of Count 8 is premature at this stage in the proceedings.

**<u>CONCLUSION</u>**

As outline above, Plaintiffs' Amended Complaint sufficiently pleads substantive and procedural due process violations under the United States and Minnesota Constitutions. Furthermore, the complaint sufficiently pleads claims for negligence, false imprisonment, and IIED pursuant to Minnesota state law. Finally, Plaintiffs' claim for a writ of mandamus is properly pled as an alternative claim for relief. For all of these reasons, Plaintiffs respectfully request that Defendants' motion to dismiss be denied.


THE LAW OFFICE OF ZORISLAV R. LEYDERMAN

Dated: <u>May 1, 2023</u>                    By: <u>s/ Zorislav R. Leyderman</u>
                                             ZORISLAV R. LEYDERMAN
                                             Attorney License No. 0391286
                                             Attorney for Plaintiff
                                             The Law Office of Zorislav R. Leyderman
                                             222 South 9th Street, Suite 1600
                                             Minneapolis, MN 55402
                                             Tel: (612) 876-6626
                                             Email: zrl@ZRLlaw.com