UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

O'Shea Chairse and Sean Burgess,                    File No. 23-cv-355 (ECT/ECW)
*on behalf of themselves and all others
similarly situated*,

        Plaintiffs,

v.                                                   **OPINION AND ORDER**

State of Minnesota Department of Human
Services and Jodi Harpstead, *Minnesota
Commissioner of Human Services, in her
official and individual capacities*,

        Defendants.

Zorislav R. Leyderman, The Law Office of Zorislav R. Leyderman, Minneapolis, MN, and
Timothy M. Phillips, Law Office of Time Phillips, Minneapolis, MN, for Plaintiffs O'Shea
Chairse and Sean Burgess, *on behalf of themselves and all others similarly situated*.

Sarah Doktori, Aaron Winter, Brandon L. Boese, Scott H. Ikeda, and Sparrowleaf Dilts
McGregor, Office of the Minnesota Attorney General, St. Paul, MN, for Defendants State
of Minnesota Department of Human Services and Jodi Harpstead, *Minnesota
Commissioner of Human Services, in her official and individual capacities*.

        Plaintiffs O'Shea Chairse and Sean Burgess were civilly committed while each was

in the custody of a Minnesota county jail under criminal charges. They claim that a

Minnesota statute, Minn. Stat. § 253B.10, subdiv. 1(b), required their admission to a state-

operated treatment program within 48 hours of their civil commitments. Their admissions

were delayed well beyond that 48-hour period.

        In this case, Mr. Chairse and Mr. Burgess have sued the Minnesota Department of

Human Services ("Department") and its Commissioner, Jodi Harpstead, alleging that their

failure to comply with this statutory requirement violated Mr. Chairse and Mr. Burgess's due process rights under the United States and Minnesota Constitutions, amounted to negligence, false imprisonment, and the intentional infliction of emotional distress under Minnesota common law, and warrants the issuance of a writ of mandamus.

Defendants seek dismissal of Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), and the motion will be granted for the most part. Plaintiffs' substantive-due-process and tort claims, and their request for a writ of mandamus, will be dismissed. Plaintiffs' procedural-due-process claims are plausible. The case's posture together with recent amendments to § 253B.10 raise doubts regarding the availability of a remedy that might redress Plaintiffs' procedural injuries. Regardless, that issue will be left to address as the parties think appropriate.

*Minn. Stat. § 253B.10, subdiv. 1(b)*

The statute is central to Plaintiffs' claims, and it helps to describe it up front. Section 253B.10 generally describes procedures to be followed when a person is civilly committed. As relevant here, the statute requires that civilly committed persons who are in a jail or correctional institution receive priority admission to a state-operated treatment program:

> (b) The commissioner shall prioritize patients being admitted from jail or a correctional institution who are:
>
> (1) ordered confined in a state-operated treatment program for an examination under Minnesota Rules of Criminal Procedure, rules 20.01, subdivision 4, paragraph (a), and 20.02, subdivision 2;
>
> (2) under civil commitment for competency treatment and continuing supervision under Minnesota Rules of Criminal Procedure, rule 20.01, subdivision 7;

> (3) found not guilty by reason of mental illness under Minnesota Rules of Criminal Procedure, rule 20.02, subdivision 8, and under civil commitment or are ordered to be detained in a state-operated treatment program pending completion of the civil commitment proceedings; or
>
> (4) committed under this chapter to the commissioner after dismissal of the patient's criminal charges.
>
> Patients described in this paragraph must be admitted to a state-operated treatment program within 48 hours. The commitment must be ordered by the court as provided in section 253B.09, subdivision 1, paragraph (d).

Minn. Stat. § 253B.10, subdiv. 1(b).  Section 253B.09, subdiv. 1(d) reads, in relevant part: "If a person is committed to a state-operated treatment program . . ., the court shall order the commitment to the commissioner.  The commissioner shall designate the placement of the person to the court."

The parties disagree regarding when the 48-hour admission deadline begins to run. Plaintiffs argue that the entry of a commitment order triggers the deadline.  *See* Pls.' Mem. in Opp'n [ECF No. 38] at 1.  Defendants argue that the 48-hour admission deadline begins to run "from the time at which a medically-appropriate bed is available."  Defs.' Mem. in Supp. [ECF No. 28] at 6 n.3.

For essentially three reasons, this order will assume without deciding that Plaintiffs' interpretation of the 48-hour rule is correct.  (1) This question did not receive primary or extensive discussion in the parties' briefs.  Defendants defended their interpretation first and only in connection with Plaintiffs' alternative request for a writ of mandamus, and then merely to argue that "[b]ecause *the statutory duty is not sufficiently clear*, Plaintiffs'

3

mandamus petition must be dismissed as a matter of law." Defs.' Mem. in Supp. at 29 (emphasis added); *see id.* at 25–29. Plaintiffs did not specifically defend their interpretation. *See generally* Pls.' Mem. in Opp'n. Plaintiffs cited to authorities endorsing their interpretation, but Plaintiffs' citations lack the specificity necessary to assess the weight to be given those authorities. (2) During the 2023 regular session, the legislature amended the statute to explicitly incorporate Defendants' interpretation. As amended, the statute includes a new subsection (e) that reads: "Patients described in paragraph (b) must be admitted to a state-operated treatment program within 48 hours of the Office of Medical Director, under section 246.018, or a designee determining that a medically appropriate bed is available. This paragraph expires on June 30, 2025." Act of May 24, 2023, ch. 61, 2023 Minn. Laws. The amendment was "effective the day following final enactment." *Id.* Final enactment "means the date and time of day the governor signed the bill." Minn. Stat. § 645.01, subdiv. 2. The governor signed the bill, S.F. No. 2934, on May 24, 2023. Act of May 24, 2023, ch. 61, 2023 Minn. Laws. The amendment thus was effective May 25, 2023. The parties did not address the effect of this amendment on Plaintiffs' claims. Notably, Defendants did not argue that the amended statute applies retroactively. *See, e.g.*, *Negri v. Patton-Minder*, No. A22-0658, 2022 WL 17574697, at ** 5–6 (Minn. Ct. App. Dec. 12, 2022). The absence of this argument implies that Defendants may not believe that the amendment was enacted to clarify the prior version, but this question deserves to be addressed specifically. (3) The 48-hour rule is the subject of a related case assigned to me and scheduled to be heard—on a motion to dismiss and a competing motion for a preliminary injunction—on October 23, 2023. *See Dalen v. Harpstead*, No. 23-cv-1877.

4

I anticipate that the statutory interpretation issue may receive further helpful attention or clarification in that context.

*Relevant Facts*

"On or about October 17, 2022, [Mr.] Chairse was civilly committed as a person who posed a risk of harm due to mental illness and a chemically dependent person to the Commissioner of Human Services."  Am. Compl. [ECF No. 12] ¶ 22.  Though the Amended Complaint is not explicit, it pretty clearly implies that Mr. Chairse was in the custody of the Hennepin County Jail on the date he was civilly committed.  *See id.* ¶¶ 22–24.  Mr. Chairse "remained in the Hennepin County Jail until December 5, 2022, when his caseworker was able to have him admitted into New Way Treatment Center."  *Id.* ¶ 24.  "During his time in Hennepin County Jail, [Mr. Chairse] was denied his mental health medications and was kept in a suicide unit where he was allowed out of his cell for short periods to shower or use the telephone."  *Id.*  "On or about November 9, 2022, [Mr.] Burgess was civilly committed."  *Id.* ¶ 25.  The Amended Complaint implies that Mr. Burgess was in custody at the Ramsey County Adult Detention Center on the date he was civilly committed.  *See id.* ¶¶ 25–27.  Mr. Burgess "remained in the Ramsey County Adult Detention Center until early February 2023, when he was admitted into a drug treatment center."  *Id.* ¶ 27.  "However, [Mr.] Burgess became sick with COVID-19 while at the drug treatment center and was removed from the center for related reasons[.]"  *Id.*  He "was returned to the Ramsey County Adult Detention Center," where he remained incarcerated up to the filing of this case.  *Id.* ¶ 27.

*This Case*

Plaintiffs filed their original Complaint in Minnesota's Fourth Judicial District (Hennepin County) on January 23, 2023. Notice of Removal [ECF No. 1] ¶ 1. Defendants removed the case to this court, *id.*, and filed a Rule 12(b)(6) motion to dismiss Plaintiffs' original Complaint soon after, *see* Motion [ECF No. 5]. Plaintiffs responded by filing their Amended Complaint. Defendants then moved (again) to dismiss the Amended Complaint under Rule 12(b)(6). Motion [ECF No. 26]. Plaintiffs assert six claims in their Amended Complaint: (1) a claim under 42 U.S.C. § 1983 alleging that Defendants failure to comply with Minn. Stat. § 253B.10 violated Plaintiffs' substantive-due-process rights under the Fourteenth Amendment to the United States Constitution, Am. Compl. ¶¶ 39–41; (2) a § 1983 claim alleging that Defendants failure to comply with Minn. Stat. § 253B.10 violated Plaintiffs' procedural-due-process rights under the Fourteenth Amendment to the United States Constitution, Am. Compl. ¶¶ 42–44; (3) a negligence claim under Minnesota common law; (4) a substantive-due-process claim under the Minnesota Constitution; (5) a procedural-due-process claim under the Minnesota constitution; (6) a false-imprisonment claim under Minnesota common law; (7) a claim for intentional infliction of emotional distress under Minnesota common law; and (8) alternatively, a petition for a writ of mandamus that would require Defendants to comply with Minn. Stat. § 253B.10, subdiv. 1(b).[1]

---

[1]     Plaintiffs filed, but then withdrew, a motion for class certification. *See* Motion [ECF No. 19]; Letter [ECF No. 39].

*Rule 12(b)(6) Standards*

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*§ 1983 – Fourteenth Amendment Substantive Due Process*

As the Eighth Circuit has explained:

> In addition to its procedural protections, the Due Process Clause protects individual liberties from government action "regardless of the fairness of the procedures used to implement them." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (internal quotation marks omitted). To state a substantive due process claim against a state official, a plaintiff must demonstrate that a fundamental right was violated and that the official's conduct shocks the conscience. *Folkerts v. City of Waverly*, 707 F.3d 975, 980 (8th Cir. 2013). Whether conduct shocks the conscience is a question of law. *Id.* Conscience shocking conduct only includes "the most severe violations of individual rights that result from the brutal and inhumane abuse of official power." *White v. Smith*, 696 F.3d 740, 757–58 (8th Cir. 2012) (quotation marks omitted). "Only a purpose to cause harm *unrelated to the legitimate object of* the government action in question will satisfy the element of arbitrary conduct shocking to the conscience,

7

necessary for a due process violation." *Folkers*, 707 F.3d at
981 (cleaned up).

*Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 898 (8th Cir. 2020).  A fundamental

right is one that is "objectively, 'deeply rooted in this Nation's history and tradition.'"

*Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (quoting *Moore v. City of East

Cleveland*, 431 U.S. 494, 503 (1977)).

Here, the Amended Complaint does not allege facts plausibly showing the violation

of a fundamental right or conscience-shocking conduct.   (1) The Amended Complaint

alleges no facts addressing whether the 48-hour rule of Minn. Stat. § 253B.10, subdiv. 1(b)

is "deeply rooted in this Nation's history and tradition."  *Glucksberg*, 521 U.S. at 720–21.

The proposition seems dubious.  And the cases Plaintiffs cite to support this point are off

topic.  *See* Pls.' Mem. in Opp'n at 7–12.  Some cases address incarceration generally, and

thus are not directed to the 48-hour rule.  Other cases concern whether a protected liberty

interest exists for purposes of a procedural-due-process claim, but that is a different issue.

(2) It is not difficult to accept the notion that a hypothetical failure to comply with the 48-

hour rule might plausibly be conscience-shocking depending on the failure's duration and

perhaps other considerations.    But the Amended Complaint does not reflect an

individualized theory.   The Amended Complaint's theory is that every 48-hour-rule

violation is conscience-shocking.   No allegations plausibly support that categorical

assertion.[2]

---

[2]      To be clear, I do not understand the Amended Complaint to allege either a claim
that Plaintiffs received constitutionally inadequate medical care or that Plaintiffs were
subjected to punitive conditions of confinement.  *See Karsjens v. Lourey*, 988 F.3d 1047,

*§ 1983 – Fourteenth Amendment Procedural Due Process*

"As for the Due Process Clause, standard analysis under that provision proceeds in two steps: We ask first whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

If the plaintiff cannot identify any protected liberty or property interest of which he was deprived, "any procedural due process claim necessarily fails." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012); *see Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (explaining that courts do not consider what process is due unless a plaintiff has a protected liberty or property interest). The United States Supreme Court has identified and applied several rules to determine whether state law creates a constitutionally enforceable liberty interest. "A state-created liberty interest arises when a state imposes 'substantive limitations on official discretion.'" *Forrester v. Bass*, 397 F.3d 1047, 1055 (8th Cir. 2005) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). To answer whether a state law creates an enforceable liberty interest, a court must "'examine[] closely the language of the relevant statutes and regulations.'" *Id.* (quoting *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 461 (1989)). "'[T]he most common manner in which a State creates a liberty interest is by establishing 'substantive predicates' to govern official decision-making, and, further, by mandating the outcome to be reached upon a finding that

---

1051–53 (8th Cir. 2021). Either theory would require individualized allegations not advanced in the Amended Complaint, presumably because Plaintiffs rely only on the 48-hour rule and its general purpose to support their substantive-due-process claim.

the relevant criteria have been met." *Id.* (quoting *Thompson*, 490 U.S. at 462).   In *Thompson*, the Supreme Court "articulated a requirement that statutes and regulations must contain 'explicitly mandatory language, *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest.'" *Id.* (quoting *Thompson*, 490 U.S. at 463).

Judged against these rules, the 48-hour rule in Minn. Stat. § 253B.10, subdiv. 1(b) creates a constitutionally enforceable liberty interest.  A close examination of the statute shows that it establishes substantive predicates that, if met, mandate a specific outcome.  If a person who is civilly committed (a) is "being admitted from jail or a correctional institution" and (b) falls within one (or more) of the four categories described in § 253B.10, subdiv. 1(b)(1) through (4), then (c) that person "must be admitted to a state-operated treatment program within 48 hours."  Minn. Stat. § 253B.10, subdiv. 1(b).  To phrase this if-then statutory regime in the Supreme Court and Eighth Circuit's cases' terms, the substantive predicates (the "ifs") are whether the civilly committed person is being admitted from a jail or correctional institution and whether the person falls within one of the four specified categories, and the mandated outcome (the "then") is that person's admission "to a state-operated treatment program within 48 hours."  *Id.*

Defendants' arguments that Minn. Stat. § 253B.10, subdiv. 1(b) does not create an enforceable liberty interest are not persuasive.  Defendants address this specific question in a footnote.  *See* Defs.' Mem. in Supp. at 12 n.6.  They argue that the statute mandates no particular outcome because it "does not specify when the referenced forty-eight hours should start running."  *Id.*  The decision to assume (without deciding) that Plaintiffs'

interpretation of the 48-hour rule is correct addresses this contention.  In the same footnote, Defendants cite *Williams v. Nix*, 1 F.3d 712 (8th Cir. 1993).  There, the court determined that a prison policy regarding transferring inmates to other institutions created no enforceable liberty interest for purposes of a Fourteenth Amendment procedural-due-process claim because the policy did not limit prison officials' discretion and did not "command a particular outcome or response when certain conditions are found to exist." *Id.* at 717–18.  As explained in the preceding paragraph, Minn. Stat. § 253B.10, subdiv. 1(b) is materially different.  It limits officials' discretion and commands a specific outcome.

Consider next whether the State's procedures were "constitutionally adequate." *Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998).  "This inquiry examines 'the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.'" *Id.* (quoting *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)).  "Relevant factors include the affected private interest, the risk of an erroneous deprivation, the probable value of additional procedural safeguards, and the government's interest, including burdens that additional safeguards would entail." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

The better answer is that this aspect of Plaintiffs' claim is sufficient.  Plaintiffs' primary point appears to be that no procedures exist to ensure the commissioner's compliance with the 48-hour rule.  In other words, once a person is civilly committed, Minn. Stat. § 253B.10, subdiv. 1(b) authorizes the Commissioner to determine whether that person is in one of the four categories of persons whose admission to a state-operated

11

treatment program must occur within 48 hours.  The statute, however, establishes no process by which a civilly committed person might seek to show that he or she is within one of these four priority categories—or to challenge a decision that he or she is not.  Nor does the statute establish any process by which a civilly committed person might seek to show that he or she is at risk of not being—or was not—admitted to a state-operated treatment program within 48 hours.  As Plaintiffs' counsel observed at the hearing, there are no procedural safeguards governing the 48-hour rule.[3]

Defendants argue that Plaintiffs' claim "is not a claim about denial of process." Defs.' Mem. in Supp. at 11.  In Defendants' understanding of the Amended Compliant, Plaintiffs "are not seeking a hearing or opportunity to be heard on whether they are entitled to admission to a state-operated treatment facility within 48 hours from civil commitment." *Id.* at 11–12.  Defendants argue that "[n]o amount of procedure – notices, hearings, process – would change [Plaintiffs'] claim that they are entitled to this substantive outcome." *Id.* at 12.

Though there is room for misunderstanding, I do not think this line of argument fairly characterizes Plaintiffs' procedural-due-process claim.  For this claim's purposes, Plaintiffs allege, not merely that their prolonged jailing following their civil commitments violated the 48-hour rule, but also that these violations resulted from the absence of available procedures through which Plaintiffs might have raised their prioritized admission

---

[3]     The parties have not addressed whether, beyond Minn. Stat. § 253B.10, a procedure might be available to challenge an adverse determination, or whether the availability of such a procedure might remedy the absence of procedures in § 253B.10.

status and challenged their prolonged jailing. It would require construing the Amended Complaint's allegations in Defendants' favor (and thus run counter to the controlling Rule 12(b)(6) standards) to say, as Defendants suggest, that any procedures would have made no difference. The two Eighth Circuit cases Defendants cite to support this argument— *Bagley v. Rogerson*, 5 F.3d 325 (8th Cir. 1993), and *Meis v. Gunter*, 906 F.2d 364 (8th Cir. 1990)—do not cast doubt on the plausibility of Plaintiffs' procedural-due-process claims. This is because the cases did not address procedural-due-process claims; in each, the court rejected a substantive-due-process claim premised only on an alleged violation of a state statute. *Bagley*, 5 F.3d at 328–29; *Meis*, 906 F.2d at 368–69.

*Minnesota Constitution*

The parties agree that Plaintiffs' substantive and procedural-due-process claims under the Minnesota Constitution are coextensive with their claims under the federal Constitution. Am. Compl. ¶¶ 51, 56; Defs.' Mem. in Supp. at 5 n.2. For this reason, Plaintiffs' substantive-due-process claim under the Minnesota Constitution will be dismissed. Were this the only question concerning the viability of Plaintiffs' procedural-due-process claim under the Minnesota Constitution, it would survive against both Defendants intact. It is not.

The parties disagree whether Plaintiffs have alleged facts plausibly showing Commissioner Harpstead's individual-capacity liability. "To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006); *see Greiger v. Minn. Dep't of*

13

*Hum. Servs.*, No. 13-cv-2140 (JRT/LIB), 2013 WL 5596599, at *3 (D. Minn. Oct. 11, 2013) ("In a civil rights action, the 'plaintiff must plead that each Government-official defendant *through the official's own individual actions*, has violated the Constitution.'" (quoting *Iqbal*, 556 U.S. at 676)).   Alleging that a defendant has general responsibility for supervising the operations of a department is insufficient to establish personal involvement. *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987).   A director may be sufficiently involved, however, if she makes policy decisions that directly result in the alleged unconstitutional conditions.   *Id.*; *Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (dismissing complaint where it failed to identify specific policies instituted by the commissioner).   A supervisor may also be liable if she "fail[ed] to train or supervise the offending actor [who] caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010).

Plaintiffs do not allege facts plausibly showing Commissioner Harpstead's individual involvement in the deprivation of Plaintiffs' constitutional rights.   The Amended Complaint mentions Commissioner Harpstead in just five of its more than 80 paragraphs. It alleges that a Scott County District Court Judge ordered Commissioner Harpstead to provide reports regarding compliance with the 48-hour rule and that the Department appealed this order. Am. Compl. ¶¶ 14–15.   It alleges that Commissioner Harpstead "was at all times material herein responsible for [the Department's] compliance with Minnesota law, including Minn. Stat. § 253B.10."   *Id.* ¶ 20.   It alleges that the Department "is vicariously liable to Plaintiff[s] and class members for the negligence of its employees, including but not limited to Defendant Harpstead." *Id.* ¶ 48.   And it requests an award of

punitive damages against her. *Id.* at 15. At most, these paragraphs allege that Commissioner Harpstead possesses general supervisory responsibility, not personal or direct involvement in Plaintiffs' procedural deprivations.

Plaintiffs acknowledge that they "do not allege that Commissioner Harpstead personally interfered with or denied their timely transfers," but argue that the Amended Complaint's allegations show that she "has personally chosen the option of inaction despite being put on notice of the growing civil commitment crisis." Pls.' Mem. in Opp'n at 20. This is not convincing. The Amended Complaint does not allege facts suggesting that "inaction" with respect to the 48-hour rule was Commissioner Harpstead's choice. If it did, that allegation says nothing about what role Commissioner Harpstead played, if any, in the absence of procedures directed to the 48-hour rule. Plaintiffs' individual-capacity claims against Commissioner Harpstead will be dismissed. The dismissal of Plaintiffs' individual-capacity claims against Commissioner Harpstead on this basis makes it unnecessary to address the Commissioner's alternative qualified-immunity argument. *See* Defs.' Mem. in Supp. at 15–16.

Defendants argue that damages are not available under the Minnesota Constitution because Minnesota does not have a § 1983 analog. Defs.' Mem. in Supp. at 16. "Minnesota courts explicitly refuse to find causes of action for damages under the Minnesota Constitution on their own unless the Minnesota Supreme Court has recognized the cause of action." *Riehm v. Engelking*, 538 F.3d 952, 969 (8th Cir. 2008) (citing *Mitchell v. Steffen,* 487 N.W.2d 896, 905 (Minn. Ct. App. 1992), *aff'd on other grounds*, 504 N.W.2d 198 (Minn. 1993); and *Bird v. State, Dep't of Pub. Safety,* 375 N.W.2d 36, 40 (Minn. Ct.

CASE 0:23-cv-00355-ECT-ECW   Doc. 47   Filed 09/14/23   Page 16 of 23

App. 1985)); *see also Smith v. Youngbird*, No. 21-cv-2249 (DSD/ECW), 2022 WL 3648700, at *9 (D. Minn. July 29, 2022), *report and recommendation accepted*, 2022 WL 3647862 (Aug. 24, 2022). Plaintiffs did not respond to this argument, meaning they have waived their right to oppose it. *See Doe v. Mayorkas*, No. 22-cv-00752 (ECT/DTS), 2022 WL 4450272, at *2 (D. Minn. Sept. 23, 2022) (citing *Espey v. Nationstar Mortg., LLC*, No. 13-cv-2979 (ADM/JSM), 2014 WL 2818657, at *11 (D. Minn. June 19, 2014)).

*

"[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). For this reason, the dismissal of Plaintiffs' individual-capacity claims against Commissioner Harpstead means Plaintiffs cannot recover damages in connection with their § 1983 claims. Ordinarily, injunctive relief may be sought. *Id.* at 71 n.10. And, as just noted, damages are not available in connection with Plaintiffs' procedural-due-process claim under the Minnesota Constitution. Considered in light of the recent amendment to Minn. Stat. § 253B.10, subdiv. 1, the unavailability of a damages remedy for Plaintiffs' procedural-due-process claim makes it difficult to envision what available equitable remedy or remedies might redress Plaintiffs' procedural injuries. The parties have not addressed this question.

## Negligence

To plead a negligence claim, a plaintiff must allege facts plausibly showing (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) the breach of the duty was the proximate cause of the injury. *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995). A statute establishes a standard of care "where an underlying common

16

law cause of action exists[.]"  *Bruegger v. Faribault Cnty. Sheriff's Dep't*, 497 N.W.2d 260, 262 (Minn. 1993).

Here, Plaintiffs identify no underlying common law cause of action.  They argue only that § 253B.10, subdiv. 1(b) creates a statutory duty and the Department's violation of that duty is negligence per se.  Pls.' Mem. in Opp'n at 15.  To support this legal contention, Plaintiffs cite *Alderman's Inc. v. Shanks*, 536 N.W.2d 4 (Minn. 1995).  There, the Minnesota Supreme Court explained: "It is well settled under Minnesota law that breach of a statute gives rise to negligence per se if the *persons harmed by that violation are within the intended protection of the statute* and the *harm suffered is of the type the legislation was intended to prevent*."  *Id.* at 8 (quotation omitted).

In *Bruegger*, the plaintiffs advanced essentially this same theory, arguing that a Minnesota statute, the Crime Victims Reparations Act ("CVRA"), Minn. Stat. § 611A.66, imposed a duty on law enforcement agencies to inform crime victims of their right to seek reparations and that a violation of the statute gave rise to a common-law negligence claim.  *Bruegger*, 497 N.W.2d at 260–61.  The Minnesota Supreme Court rejected this argument.  The court explained:

> Appellants argue that "[a]n unexcused violation of a statute that establishes a standard of care is negligence, and liability is the consequence if proximate causation is proved," citing *Lorshbough v. Township of Buzzle*, 258 N.W.2d 96, 98 (Minn. 1977).
>
> In *Lorshbough,* Beltrami County, while required by statute to enforce state pollution control regulations regarding solid waste disposal, knowingly failed to comply with the regulations and failed to abate a known fire hazard.  As a result, the disposal site caught fire and caused a forest fire which

destroyed real and personal property of the neighboring plaintiffs. *Id.* at 97. The plaintiffs sued the county, arguing that the county failed to uphold its statutory duty to maintain the disposal site in a safe condition. This court ruled that a statute could establish a standard of care, breach of which could give rise to liability in tort. *Id.* at 102. Appellants argue that our holding in *Lorshbough* is controlling in this case. We disagree, because we read *Lorshbough* as stating that where an underlying common law cause of action exists, a statutory enactment could establish a standard of care in a negligence action.

In *Lorshbough,* absent the statute, Beltrami County would still have been subject to suit in common law negligence because of its failure to properly maintain the dump, thereby allowing the forest fire to develop. Instead of creating a new cause of action for improper maintenance of public property causing damage to neighboring plaintiffs, the statute merely established the standard of care to be applied for public bodies charged with the duty of maintaining township dumps.

*Bruegger*, 497 N.W.2d at 261–62 (footnote omitted). Applying this rule, the court in *Bruegger* affirmed the case's dismissal because "no common law duty required the sheriff's department to inform the Brueggers of their potential rights of recovery under the CVRA. The requirement to inform did not arise until the enactment of the CVRA." *Id.* at 262. The court also noted "that the CVRA does not provide for civil liability for a law enforcement agency's failure to inform citizens of their potential rights to recover under the act." *Id.*

We have just that situation here. Plaintiffs identify no common law duty that might have required the Department to prioritize their transfer from a jail or correctional institution to a state-operated or similar treatment program. *See* Pls.' Mem. in Opp'n at 15–16. The prioritization and transfer requirement, and the 48-hour rule, did not arise until

18

enactment of Minn. Stat. § 253B.10, subdiv. 1(b). And the statute provides no private right of action for the Department's failure to comply with the 48-hour rule. Adhering to *Bruegger*, Plaintiffs' negligence claim is legally implausible and must be dismissed.

*False Imprisonment*

False imprisonment is an intentional tort. *Wild v. Rarig*, 234 N.W.2d 775, 792 (Minn. 1975). A claim for false imprisonment requires: "(1) words or acts intended to confine, (2) actual confinement, and (3) awareness by the plaintiff that he is confined." *Blaz v. Molin Concrete Prod. Co.*, 244 N.W.2d 277, 279 (Minn. 1976). The first element is generally understood to require an affirmative act. *See Heilman v. Courtney for Minn. Dep't of Corrs.*, No. A17-0863, 2019 WL 4008097, at *2 (Minn. Ct. App. Aug. 26, 2019) ("Minnesota draws on the Restatement (Second) of Torts to define false imprisonment, under which false imprisonment requires an 'act' intended to confine another."); *Palmentere v. Campbell*, 344 F.2d 234, 238 (8th Cir. 1965) ("An affirmative act is necessary to render one liable for false imprisonment. Consent to or acquiescence in the acts of another for which one is not otherwise responsible cannot be used as the basis of the imposition of liability for false imprisonment."); *Davis v. Weil Clothing Co.*, 367 S.W.2d 19, 23 (Mo. Ct. App. 1963) ("A cause of action for false imprisonment cannot be based upon a mere negation or failure to speak or act, but can only be based upon some affirmative act instigating thereto." (quotation omitted)). In *Heilman*, the Minnesota Court of Appeals held that the "affirmative act" requirement is not satisfied if the false imprisonment "claim is premised on a failure to conduct an official inspection based on a 'risk' of [a prisoner's] over-incarceration." 2019 WL 4008097, at *2.

19

Plaintiffs' false imprisonment claim is not plausible. (1) Plaintiffs do not allege that their initial imprisonments were unlawful or improper for any reason. Regardless, Plaintiffs do not allege that the Department had anything to do with their initial imprisonments. (2) Nor do Plaintiffs allege that the Department acted intentionally and affirmatively to imprison them. Plaintiffs' theory is that the Department "fail[ed] to transfer them to a state-operated treatment facility" in compliance with the 48-hour rule. Am. Compl. ¶ 2. But as the cases cited in the preceding paragraph make clear, a failure to act does not generally trigger liability for false imprisonment. (3) Plaintiffs plausibly allege that their confinement conditions changed, or would have changed, on transfer to a state-operated treatment program. But it is difficult to understand how a failure to change confinement conditions can be false imprisonment. Plaintiffs were imprisoned in the relevant sense whether they were in jail or civilly committed to a state-operated treatment program. Either way, Plaintiffs were "confined against [their] will." *Gleason v. Metro. Council Transit Operations*, 563 N.W.2d 309, 319 (Minn. Ct. App. 1997). (4) Plaintiffs cite no case or other authority suggesting that a false imprisonment claim might be plausible on these or similar facts.

### Intentional Infliction of Emotional Distress

To plead a claim for intentional infliction of emotional distress under Minnesota law, Plaintiffs must allege facts plausibly showing "(1) the conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) [the conduct] caused emotional distress; and (4) the distress was severe." *K.A.C. v. Benson*, 527 N.W.2d 553, 560 (Minn. 1995) (citation omitted); *see also Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428,

438–39 (Minn. 1983).  To be "extreme and outrageous," conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Hubbard*, 330 N.W.2d at 439.  "Severe emotional distress" occurs when "the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.* "The operation of this tort is sharply limited to cases involving particularly egregious facts." *Id.*

Plaintiffs' intentional-infliction-of-emotional-distress claim is not plausible. Plaintiffs have not alleged facts suggesting that Defendants' conduct was extreme and outrageous.  Plaintiffs do not allege that the Department's failure to admit them to a state-operated treatment program was extreme and outrageous in the abstract.  Their claim depends entirely on the alleged violation of the 48-hour rule in Minn. Stat. § 253B.10, subdiv. 1(b).  It is difficult to understand how the admission delays Plaintiffs allege—even if violations of the statute—might be "utterly intolerable to the civilized community," *Hubbard*, 330 N.W.2d at 439, when the legislature might reasonably have chosen any number of ways to address this issue.  Plaintiffs do not argue, for example, that the recent amendment to § 253B.10, which will lengthen admission delays, creates an atrocious or intolerable regime.  Again, Plaintiffs cite no factually similar case or authority that might support this claim given Plaintiffs' theory.

## *Writ of Mandamus*

The Amended Complaint is not specific regarding the authority for this claim. Presumably, because Plaintiffs brought their case originally in Minnesota state court, they intended to rely on Minnesota law.  If that remains the case, I do not think the writ is

available.   Under Minnesota law, "'[t]he authority to issue a writ of mandamus is statutory.'"  *Mendota Golf, LLP v. City of Mendota Heights*, 708 N.W.2d 162, 171 (Minn. 2006) (quoting *State v. Wilson,* 632 N.W.2d 225, 227 (Minn. 2001)); *see* Minn. Stat. §§ 586.01–586.12.  With exceptions not relevant here, the statute vests Minnesota state district courts with "exclusive original jurisdiction in all cases of mandamus[.]"  Minn. Stat. § 586.11.  The parties have not addressed, and I doubt based on its text, that a federal district court has power to issue a writ of mandamus under the Minnesota mandamus statute. Perhaps Plaintiffs intended to rely on federal law for their request, but that relief is unavailable too.  A federal district court possesses jurisdiction to issue a writ of mandamus "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  The statute does not give a district court jurisdiction "to issue a writ of mandamus compelling a *state* actor to act."  *Herbert v. Winona Cnty.*, 111 F. Supp. 3d 970, 975 (D. Minn. 2015); *see also Rivera v. State of Minnesota*, No. 22-cv-1129 (KMM/BRT), 2022 WL 4298745, at *1 (D. Minn. Sept. 19, 2022) (same).[4]

---

[4]     Defendants argue that they possess statutory immunity under Minn. Stat. § 253B.23, subdiv. 4.  The availability of this immunity depends on finding that Defendants' actions were "in good faith, upon either actual knowledge or information thought by them to be reliable[.]"  *Id.*  For two reasons, the case will not be dismissed on this basis.  First, Defendants have not shown that the immunity created by § 253B.23, subdiv. 4, applies to Plaintiffs' procedural-due-process claim.  Second, regardless, the requisite "good faith" finding would necessitate inquiring beyond the Amended Complaint's allegations and construing those facts favorably to Defendants.  That would be inappropriate at the motion-to-dismiss stage on this record.

# ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendants' Motion to Dismiss [ECF No. 26] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.      The Motion to Dismiss is **GRANTED WITHOUT PREJUDICE** as to Plaintiffs' claims in Count 1 (Fourteenth Amendment Substantive Due Process), Count 3 (Negligence and Negligence Per Se), Count 4 (Substantive Due Process Under the Minnesota Constitution), Count 6 (False Imprisonment), Count 7 (Intentional Infliction of Emotional Distress), and Count 8 (Writ of Mandamus).

2.      The Motion to Dismiss is **DENIED** as to Plaintiffs' claims in Count 2 (Fourteenth Amendment Procedural Due Process) and Count 5 (Procedural Due Process Under the Minnesota Constitution).

Dated: September 14, 2023                    s/ Eric C. Tostrud
                                             Eric C Tostrud
                                             United States District Court