UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| O'Shea Chairse, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Minnesota Department of Human Services and Jodi Harpstead, in her official and individual capacity as Commissioner of the Department of Human Services,<br><br>Defendants. | Civil File No. 23-cv-00355 (ECT/SGE)<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

Mr. Chairse's Amended Complaint is now moot. The only relief remaining in this lawsuit is prospective injunctive relief, but (1) Mr. Chairse is no longer in jail awaiting admission, and (2) the statute under which he sued—Minnesota Statutes section 253B.10—has been amended twice since Mr. Chairse was discharged from jail. The Court is unable to grant him any relief he sought under the prior version of the law given that that version is no longer in effect, so his claims should be dismissed as moot.

Even were his claims not moot, Plaintiff confirmed in discovery that those claims fail on the merits because he does not seek procedural protections related to determining whether he was entitled to priority admission. Rather, he wants the Commissioner to provide *others* placed on the Priority Admission List with four pieces of substantive

information upon their commitment. None relate to determining Mr. Chairse's – or anyone's – entitlement to priority admission. Summary judgment should be entered in favor of Defendants.

## STATEMENT OF UNDISPUTED FACTS

**I.   STATUTORY BACKGROUND.**

The issues Plaintiff raises in this lawsuit stem from his civil commitment following a finding that he was incompetent to stand trial in a criminal proceeding. A brief background of the interplay between criminal incompetence and civil commitment law is therefore appropriate. This brief discusses the criminal and civil commitment procedures in place at the time of Plaintiff's criminal charges relevant to this lawsuit and at the time of his civil commitment.

**A.   Criminal Proceedings.**

In Minnesota at the time of Plaintiff's claims, once a criminal court determined that reason existed to doubt the defendant's competency, "the [criminal] court [was required to] suspend the criminal proceedings." Minn. R. Crim. P. 20.01, subd. 3 (amended effective November 1, 2024). If the defendant was charged with a felony or gross misdemeanor, the criminal court was required to order an examination of the defendant's mental condition and set a hearing on the defendant's competency. *Id.*, subd. 3(b). If, following this examination, the criminal court could not conclude, by the greater weight of the evidence, that the defendant was competent, it was required to enter an order finding the defendant incompetent. *Id.*, subd. 5(c). If the defendant was not competent, and the charge was a misdemeanor, the rules required the charges be dismissed. *Id.*, subd. 6(b). If

the charge was a felony or gross misdemeanor, the proceedings remained suspended. *Id.* The criminal court was then required to direct the county where the criminal case was filed to determine whether the defendant should be civilly committed. *Id.* Although the criminal proceeding was suspended, the criminal court retained authority over the case, including but not limited to bail and conditions of release. *Id.*, subd. 3(c).

### B.     Civil Commitment Proceedings.

Civil commitment proceedings are conducted separately from criminal proceedings. Before a county can petition for civil commitment, it is first required to appoint a screening team to investigate whether a petition for civil commitment is appropriate. Minn. Stat. § 253B.07, subd. 1(a). If civil commitment is warranted, the county files a petition for commitment in the commitment court. *Id.*, subd. 2(a). Generally, individuals civilly committed following a finding of incompetency fall into one of three commitment categories: (1) a person who poses a risk of harm due to a mental illness ("MI"), (2) a chemically dependent person ("CD"), or (3) a person who has a mental illness and is dangerous to the public ("MI&D"). *See* Minn. Stat. § 253B.02, subds. 2, 17, 17a. Notably, Minnesota did not, at the time of Plaintiff's claims or his civil commitment, civilly commit individuals specifically for competency restoration. *See generally* Minn. Stat. ch. 253B. [1]

---

[1] Minnesota still does not civilly commit individuals for competency restoration. However, substantial revision to Minnesota law occurred following Plaintiff's complaint, amending Minnesota law relating to competency attainment and the role of the Department of Human Services in supporting competency attainment. *See* Minn. Stat. § 611.45 (2023). That law is not addressed because it is not relevant to Plaintiff's claims.

A person against whom a civil commitment petition was filed has a right to counsel, and that lawyer is appointed to represent the patient until the petition is dismissed or the patient is discharged. Minn. Stat. § 253B.07, subd. 2c; Minn. Spec. R. P. Commit. Act 9(a). Commitment hearings must be held within fourteen days of the petition, though that period can be extended for up to thirty additional days. Minn. Stat. § 253B.08, subd. 1(a). If the commitment court determines by clear and convincing evidence that the proposed patient met criteria for commitment as MI or CD and found no suitable alternative to judicial commitment, the commitment court must "commit the patient to the least restrictive treatment program or alternative programs which can meet the patient's treatment needs . . . ." Minn. Stat. § 253B.09, subd. 1(a).

### C. THE PRIORITY ADMISSION STATUTE.

Minnesota law required, and still requires, the Commissioner to prioritize the admission of certain individuals who are ordered to be confined in, or civilly committed to, a state-operated treatment program, and who are residing in a jail or correctional institution. Minn. Stat. § 253B.10, subd. 1(b) (2022). This statute is colloquially known as the Priority Admission Statute. In March 2023, at the time Plaintiff filed his operative complaint (ECF No. 12), the Priority Admission Statute stated, in full:

> The commissioner shall prioritize patients being admitted from jail or a correctional institution who are:
>
> > (1) ordered confined in a state-operated treatment program for an examination under Minnesota Rules of Criminal Procedure, rules 20.01, subdivision 4, paragraph (a), and 20.02, subdivision 2;

4

>> (2) under civil commitment for competency treatment and continuing supervision under Minnesota Rules of Criminal Procedure, rule 20.01, subdivision 7;
>
> (3) found not guilty by reason of mental illness under Minnesota Rules of Criminal Procedure, rule 20.02, subdivision 8, and under civil commitment or are ordered to be detained in a state-operated treatment program pending completion of the civil commitment proceedings; or
>
> (4) committed under this chapter to the commissioner after dismissal of the patient's criminal charges.
>
> Patients described in this paragraph must be admitted to a state-operated treatment program within 48 hours. The commitment must be ordered by the court as provided in section 253B.09, subdivision 1, paragraph (d).

Minn. Stat. § 253B.10, subd. 1(b) (2022). The Commissioner interpreted the 48-hour period in this statute to run from the time a medically appropriate bed was available.

## II. PLAINTIFF'S CRIMINAL CHARGES, FINDING OF INCOMPETENCY, AND CIVIL COMMITMENT.

Between May 21, 2022, and July 1, 2022, Plaintiff was criminally charged with various misdemeanor counts related to damage to property and trespass. *See State v. Chairse*, No. 27-CR-22-9669 (Hennepin Cnty. Dist. Ct.); *State v. Chairse*, No. 27-CR-22-9791 (Hennepin Cnty. Dist. Ct.); *State v. Chairse*, No. 27-CR-22-12580 (Hennepin Cnty. Dist. Ct.). On June 30, 2022, the criminal court[2] referred Mr. Chairse for a psychological examination to determine whether he was competent to participate in the proceedings. Declaration of Sarah Doktori ("Doktori Decl."), Ex. 1 ¶ 2. After an examination and hearing, the criminal court concluded on September 20, 2022, that Mr. Chairse was not

---

[2] Because the criminal proceeding is separate from the civil commitment proceeding, Defendants refer to the district court in the criminal matter as the "criminal court" and the district court in the civil commitment matter as the "commitment court."

5

competent to stand trial and dismissed the misdemeanor charges. Doktori Decl., Ex. 1. At the time his misdemeanor charges were dismissed, Mr. Chairse resided in the community. Doktori Decl., Ex. 2, at 31:1-32:15[3].

Upon this dismissal, Hennepin County petitioned to civilly commit Mr. Chairse as either CD or MI on September 28, 2022. Doktori Decl., Ex. 3. Following a hearing, the Hennepin County district court civilly committed Mr. Chairse as both CD and MI. Doktori Decl., Ex. 4. The court concluded that Mr. Chairse should be committed to the Commissioner. *Id.* at 4. Mr. Chairse was represented by attorney Ellen LaVigne for his civil commitment, who he described as "a good lawyer." Doktori Decl., Ex. 2 at 35:24–36:6. According to Mr. Chairse, Ms. LaVigne informed him of his rights related to his commitment, and that he knew he could ask her any questions he had about his commitment. *Id.* at 36:4-9.

At the time of his commitment, Mr. Chairse had been arrested on new criminal charges and was being held in the Hennepin County jail. Doktori Decl., Ex. 5; Doktori Decl., Ex. 2 at 34:23-35:12. According to the arrest warrant, Mr. Chairse allegedly punched an individual in the face at a bus stop in Minneapolis. Doktori Decl., Ex. 5. The criminal court set bail at $40,000 with no conditions, or $10,000 with conditions. Conditional Release Order, *State v. Chairse*, No. 27-CR-22-18819 (Hennepin Cnty. Dist. Ct. Sept. 29, 2022). Mr. Chairse did not post bond. Doktori Decl., Ex. 2 at 34:23-35:12.

---

[3] Defendants were unable to complete their deposition of Mr. Chairse because he left the deposition prior to its conclusion and did not return. *See* Doktori Decl., Ex. 3 at 69:18–70:5.

Once he was placed in jail on these new charges, Mr. Chairse's civil commitment became subject to the Priority Admission Statute, as he was civilly committed following the dismissal of his misdemeanor charges and was placed in jail (albeit on other charges) during the commitment.  *See* Minn. Stat. § 253B.10, subd. 1(b)(4).  It is undisputed that DHS's treatment facilities appropriate for Mr. Chairse at the time he was arrested, however, were full.  Declaration of Dr. Maria Harmandayan, M.D. ("Harmandayan Decl.") ¶ 4.  DHS therefore placed Mr. Chairse on the priority admissions waiting list for an available, medically appropriate bed at a DHS treatment facility.  Harmandayan Decl. ¶ 5.

At the request of Mr. Chairse's county case manager and the authorization of Dr. Maria Harmandayan, M.D., DHS's Central Preadmissions staff coordinated a remote provisional discharge[4] for Mr. Chairse while he was awaiting admission to a state-operated treatment facility.  Harmandayan Decl. ¶ 6.  Mr. Chairse was provisionally discharged to Nu Way Treatment Center; DHS records indicate the effective date of Mr. Chairse's provisional discharge was November 30, 2022, Harmandayan Decl. ¶ 8, but Hennepin County did not appear to release Mr. Chairse from jail until December 5, 2022.  Doktori Decl., Ex. 2 at 14:25-15:6.

---

[4] A remote provisional discharge occurs when Medical Director for the Minnesota Department of Human Services – Mental Health and Substance Abuse Treatment Services division, and where necessary the Executive Medical Director, conclude that the patient meets the medical criteria for provisional discharge and approve a provisional discharge plan developed in collaboration with county partners.  Harmandayan Decl. ¶ 7; *see also* Minn. Stat. § 253B.15, subd. 1 (discussing provisional discharge).  It is called a "remote" provisional discharge because the individual is provisionally discharged before ever being admitted to a state-operated treatment facility; i.e., he is provisionally discharged from a "remote" location.  Harmandayan Decl. ¶ 7.

## III.    THE PRESENT LAWSUIT.

On January 23, 2023, after he had been released from jail, Mr. Chairse filed the present lawsuit—a putative class action—against DHS and DHS Commissioner Harpstead in Minnesota state court, which Defendants removed to federal court.  ECF No. 1; ECF No. 1-1.  Mr. Chairse subsequently amended his lawsuit to add another plaintiff and additional claims.  ECF No. 12.  That other plaintiff subsequently stipulated to dismissal of his claims, and they were dismissed.  ECF Nos. 50; 52.  In general, Mr. Chairse claimed that his detention at the Hennepin County Jail violated his rights under the U.S. and Minnesota Constitutions, as well as Minnesota common law, given his interpretation of the Priority Admission Statute.  ECF No. 12.

Defendants moved to dismiss.  ECF Nos. 26; 28.  With respect to Plaintiff's procedural due process claims, Defendants argued that Plaintiff's complaint did not actually seek any *process*.  *Id.*  The Court, however, disagreed, and on September 13, 2023, it dismissed all claims other than the procedural due process claims brought under the United States and Minnesota Constitutions (Counts 2 and 5).  ECF No. 47, at 23.  In holding Plaintiff stated a claim, the Court observed that read in the light most favorable to Plaintiff, his complaint alleged that the "absence of available procedures" to raise his priority admission status and "challenge[] [his] prolonged jailing" stated a claim for relief.  *Id.* at 12–13.  The Court, however, dismissed claims against Defendant Harpstead in her individual capacity and dismissed all claims for damages, leaving only claims for injunctive relief related to Plaintiff's procedural due process claims under the federal and Minnesota constitutions.  *Id.* at 15.

IV. **PLAINTIFF ADMITTED IN DISCOVERY THAT HIS PROCEDURAL DUE PROCESS CLAIM HAD NOTHING TO DO WITH A LACK OF PROCEDURE TO CHALLENGE HIS CONFINEMENT.**

Discovery confirmed that Plaintiff does *not* claim that his confinement in jail following his civil commitment resulted from lack of procedures to raise his priority admission status or challenge his jailing. Specifically, the parties confirmed that (1) they agreed that Mr. Chairse was entitled to priority admission as outlined in the statute; and (2) Plaintiff did not assert that there were any facts that could have been found that, in his view, would have permitted his admission to a state-operated treatment facility more than 48 hours after his civil commitment, given his priority admission status.

Plaintiff acknowledged that DHS had placed him on the Priority Admission Law waitlist ("Priority Admission List") —a point Defendants do not dispute. Doktori Decl., Ex. 6 at 7 ("Admit that you were placed on the Priority Admission List. RESPONSE: Admit."); Harmandayan Decl. ¶ 5 (stating Plaintiff was placed on DHS's Priority Admission List). Mr. Chairse also confirmed that there were no "facts or circumstances that [he] believe[d] would allow DHS to admit [him] outside of the timeframe in which [he] assert[ed] DHS [was] required to admit [him]." Doktori Decl., Ex. 7 (Amended Response to Interrogatory 3).

Finally, Plaintiff confirmed that the only injunctive relief he was seeking in this lawsuit was that DHS should provide the following information to individuals on the Priority Admission List: "(1) notice of their rights under the current state law; (2) notice of their right to consult with an attorney regarding their rights; (3) notice of their right to submit a complaint to the Minnesota Department of Corrections (Inspection and

9

Enforcement Unit) regarding any abuse related to or deprivation of medical or mental health care while awaiting transfer; and (4) notice of their right to contact DHS to inquire about the status of their transfer." Doktori Decl., Ex. 6, at 2 (Response to Interrogatory 2). However, Mr. Chairse acknowledged that while in jail, he knew he was on the Priority Admission List, Doktori Decl., Ex. 2 at 60:6-19, that he was represented by counsel, and that "[i]f he had questions about [his] case, [he] could ask [his lawyer] and she would answer them." *Id.* at 36:7-9; *see also id.* at 65:1-6.

V. POST-COMPLAINT AMENDMENTS OF MINN. STAT. § 253B.10, SUBD. 1(B)

During the pendency of Mr. Chairse's claim, the Minnesota legislature twice amended the statute that was the basis for Mr. Chairse's procedural due process claims. First, in May 2023, the Minnesota Legislature clarified that the 48-hour period in the Priority Admission Statute runs from the time a medically appropriate bed is available: "Patients described in paragraph (b) must be admitted to a state-operated treatment program within 48 hours of the Office of Medical Director, under section 246.018, or a designee determining that a medically appropriate bed is available. This paragraph expires on June 30, 2025." Act of May 24, 2023, ch. 61, 2023 Minn. Laws; Minn. Stat. § 253B.10, subd. 1(e) (2023).

Second, in May 2024, the Minnesota Legislature further amended the Priority Admission statute, giving the Commissioner discretion to order priority admissions based on the decisions of physicians in DHS's executive medical director's office, using a framework that accounts for a range of factors, including (but not limited to) the length of time the person has been waiting for admission, the intensity of the treatment needed, the

10

person's safety and safety of others in the person's current environment, whether the person has access to necessary treatment, and negative impacts of an admission delay on the referring facility. Act of May 24, 2024, ch. 125, art. 4, § 5, 2024 Minn. Sess. Legis. Serv. ch. 125 (West) (codified as Minn. Stat. § 253B.10, subd. 1(b) (2024)).

## STANDARD OF REVIEW

Summary judgment should be granted to a party upon its showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). While the court views all evidence in favor of the non-moving party, "[t]o create a genuine dispute of fact, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Nelson v. Lake Elmo Bank*, 75 F.4th 932, 937 (8th Cir. 2023) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## ARGUMENT

The only relief Plaintiff still seeks is for prospective injunctive relief. But it is undisputed that Plaintiff is no longer in jail, and the statute under which he sought injunctive relief is no longer in place. Plaintiff's claims are therefore moot, as this Court can no longer provide relief to remedy any ongoing harm to Plaintiff. But even if his claims were not moot, summary judgment for Defendants would nevertheless be appropriate because discovery confirmed that Plaintiff's procedural due process claims otherwise fail.

### I.     PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIMS ARE MOOT.

"When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief,' the case is considered moot." *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005). The Eighth Circuit has confirmed that no case or controversy exists and the mootness doctrine applies when a law that is the basis for a claim for declaratory judgment "has been amended or repealed . . . unless the problems are 'capable of repetition yet evad[ing] review.'" *Young Am.'s Found. v. Kaler*, 14 F.4th 879, 886 (8th Cir. 2021) (citing *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 687 (8th Cir. 2012)). The ability of the governing body to re-enact the law, however, is not sufficient to demonstrate capability of repetition and likelihood of evading review. *Id.* Rather, finding that a policy is capable of repetition and yet evading review where legislation has changed the statute is "rare and typically involve[s] situations where it is virtually certain that the repealed [policy] will be reenacted." *Id.* (citation omitted).

### A.     Mr. Chairse Is No Longer In Jail Awaiting Admission And Lacks Standing To Seek The Relief He Demands.

Mr. Chairse seeks only prospective injunctive relief related to his procedural due process claims; no damages are at issue. Accordingly, to establish standing to seek injunctive relief, the plaintiff must show that he "faces a threat of ongoing or future harm." *Park v. Forest Serv. of United States*, 205 F.3d 1034, 1037 (8th Cir. 2000). Abstract injury is not enough; the threat of injury must be both "real and immediate," not "conjectural" or "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

Mr. Chairse was released from jail in December 2022. Doktori Decl., Ex. 2 at 14:25-15:6. As of July 2024, Mr. Chairse was living in the community in an apartment in Minneapolis. *Id.* at 16:20-:21. Because he is no longer in jail, he is no longer subject to the Priority Admission statute. Minn. Stat. § 253B.10. Accordingly, assuming *arguendo* the statute provided him with a property or liberty interested protected by procedural due process while he was residing in jail, *see* Minn. Stat. § 253B.10, subd. 1(b) (2022), that interest ceased once he was released from jail. His claims are moot and judgment should be entered in favor of Defendants. *See, e.g.*, *Lyons*, 461 U.S. at 105 (holding plaintiff lacked standing to seek injunction barring use of chokeholds, when plaintiff failed to show a "real and immediate threat" of ongoing harm); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (holding inmate's claims for injunctive relief to improve prison conditions were moot when he was transferred to another facility and was no longer subject to those conditions); *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (holding that plaintiff's First Amendment claims were moot when he was transferred to another facility and was no longer subject to the challenged policies).

Further, in discovery, Mr. Chairse confirmed that he does not even seek an order compelling his admission to a state-operated treatment program, or any procedural change that would have altered his likelihood of admission within the 48-hour period in which he asserts he should have been admitted under the prior version of the law. Doktori Decl. Ex. 6, at 2 (Response to Interrogatory 2). Rather, he seeks "a procedural change by DHS for notifying individuals awaiting transfer of their rights including, without limitation, the following: (1) notice of their rights under the current state law; (2) notice of their right to

13

consult with an attorney regarding their rights; (3) notice of their right to submit a complaint to the Minnesota Department of Corrections (Inspection and Enforcement Unit) regarding any abuse related to or deprivation of medical or mental health care while awaiting transfer; and (4) notice of their right to contact DHS to inquire about the status of their transfer." *Id.*

But Plaintiff acknowledged that he either already knew this information or knew that he could ask his attorney for this information. Specifically, Mr. Chairse testified he knew that he qualified for priority admission under Minnesota Statutes section 253B.10.[5] Doktori Decl., Ex. 2 at 68:2-18. He also knew that he was represented by counsel in his civil commitment action, and that he could consult with his attorney if he had any questions about his rights. *Id.* at 64:22-65:6. Plaintiff admitted that his commitment attorney communicated with Plaintiff about his rights related to his commitment and time in jail:

> Q: Okay. So you were going through the civil commitment process during [the time you were in jail], you said?
>
> A: Yeah.
>
> Q: Do you remember who your lawyer was for that?
>
> A: Ellen LaVigne.
>
> . . . .
>
> Q: . . . Was she communicating with you about your rights and things like that?
>
> A: Yeah. Ellen was a good lawyer.

---

[5] During his deposition, Mr. Chairse confirmed that the only "right" to which he was referring in the first category was his right to be admitted within 48 hours. Doktori Decl., Ex. 2 at 62:20-63:23.

14

> Q: If you had questions about your case, you could ask her and she would answer them?
>
> A: Yeah.

Doktori Decl., Ex. 2 at 35:21–36:9.  Mr. Chairse later confirmed during his deposition that although he knew he could ask his commitment attorney any questions about his rights in jail, he never asked her any questions.  *Id.* at 64:22-65:9.  Mr. Chairse also confirmed he knew he could make complaints to the Department of Corrections about his jail conditions, but he chose not to because he believed "the jail would just cover it up, because that's what they do."  *Id.* at 65:1-4.  Finally, Mr. Chairse confirmed during his deposition that he knew he could obtain information about the status of his admission to a state-operated treatment facility.  *Id.* at 54:16-21.  He testified that he actually had this information and was regularly updated about his status on the Priority Admission list.  *Id.* at 60:6-22.

Because the "relief" Plaintiff seeks is simply to be informed of information he already knew or could access, he lacks standing to seek that relief.  Not receiving the information he requests could not have harmed him given that he already knew it or had access to it.  Summary judgment in favor of Defendants is appropriate.  *See Hicks v. Butts*, No. 1:09CV00011, 2010 WL 545931, at *3 (E.D. Ark. Feb. 10, 2010) (concluding a plaintiff lacked standing to bring claim because he was not harmed by Defendants' alleged actions).[6]

---

[6] S*ee also Lyons P'ship v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001) (stating that a prospective injunction is entered "only on the basis of current, ongoing conduct that threatens future harm"); *Crosby v. Hosp. Auth. Of Valdosta & Lowndes Cnty.*, 93 F.3d 1515, 1534 (11th Cir. 1996) ("Because injunctive relief is prospective, a party seeking an injunction must show a threat of future injury.  Logically, a prospective remedy

### B. The Priority Admission Statute Was Twice Amended To Clarify That Mr. Chairse Has No Entitlement To Admission Within 48 Hours Of Commitment.

In this action, Mr. Chairse claims that the failure to admit him to a state-operated treatment facility within 48 hours of his civil commitment violated his procedural due process rights because in his view, as an individual entitled to priority admission under the statute, he was legally entitled to admission within that window. ECF No. 12. These claims are now moot because the statute that he asserts is the basis for his asserted liberty interest—the Priority Admission statute—has been amended. *Young Am.'s Found*, 14 F.4th at 886. The statute now states that admission within 48 hours runs from the time that "the Office of the Executive Medical Director, under section 246C.09, or a designee determine[s] that a medically appropriate bed is available." Minn. Stat. § 253B.10, subd. 1(e). It also instructs the DHS to use a "priority admissions framework" to order its admissions that takes into account numerous factors, such as the person's treatment needs, the person's safety and safety of others, access to treatment, and the time spent on the waiting list for admission. *Id.*, subd. 1(b). In other words, the statute now expressly disclaims the underlying entitlement that Mr. Chairse asserted he was owed. *Id.* Because under no reading of the statute would Mr. Chairse be entitled to admission within 48 hours *of commitment*—as he claimed—the Court can no longer grant effective relief to Mr. Chairse. The action must be dismissed as moot.

---

will provide no relief for an injury that is, and likely will remain, entirely in the past."); *J.A.W. v. Evansville Vanderburgh Sch. Corp.*, 323 F. Supp. 3d 1030, 1038 n.6 (S.D. Ind. 2018) (stating that what may have been an issue years ago "is irrelevant to whether J.A.W. is entitled to the prospective injunctive relief he seeks now").

## II. THE UNDISPUTED FACTS DEMONSTRATE THAT PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIMS FAIL AS A MATTER OF LAW.

Mr. Chairse claims that by failing to admit him to a state-operated treatment facility within 48 hours of his detention while civilly committed, DHS violated procedural due process under the Fourteenth Amendment to the U.S. Constitution and the Minnesota Constitution. To prove a violation of procedural due process, a plaintiff must show the following elements: (1) a protected life, liberty, or property interest[7]; (2) the deprivation of the same; and (3) the state's failure to provide adequate procedural rights before impinging upon the protected interest. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *see also Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011). Due process protections under the Minnesota constitution are "identical to the due process guaranteed under the Constitution of the United States." *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn. 1988). Mr. Chairse's claims here fail because the undisputed facts do not demonstrate that procedural protections provided by the state were inadequate.

In determining whether the state has provided adequate procedure, courts balance the private interest at issue, the government interest at issue, and critically here, "'the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.'" *Mickelson v. Cnty. of Ramsey*, 823 F.3d 918, 924 (8th Cir. 2016). The Eighth Circuit has explained that

---

[7] This Court found previously that Minn. Stat. § 253B.10, subd. 1(b) as it was written at the time Plaintiff brought his claim created a constitutionally enforceable liberty interest. ECF No. 47 at 10. But as discussed above, Mr. Chairse unequivocally has no such interest under the amended statute.

the value of procedural safeguards is based on whether procedure would help determine predicate facts needed to assess entitlement to a certain outcome. This is because when "a state law gives me the right to a certain outcome in the event of the occurrence of certain facts, I have a right, by virtue of the Fourteenth Amendment, to whatever process is due in connection with the determination of whether those facts exist." *Bagley v. Rogerson*, 5 F.3d 325, 328 (8th Cir. 1993) (discussing procedural due process claims); *see also Meis v. Gunter*, 906 F.2d 364, 368 (8th Cir. 1990) ("[i]f the state says that an inmate is entitled to be paroled if certain substantive factual predicates are established, the inmate has a liberty interest in parole, and it cannot be denied until some appropriate sort of hearing has been held at which the inmate will be allowed to show that the requisite factual predicates exist") (discussing procedural due process claims).

Here, Mr. Chairse's procedural due process claims fail because the undisputed facts do not and cannot demonstrate that inadequate procedure caused the impingement on the liberty interest he asserts. *See* Doktori Decl., Ex. 6 (Amended Response to Interrogatory 3). Rather, Mr. Chairse functionally concedes that any additional procedural safeguards would be meaningless because none of the predicates to determining eligibility for priority admission were disputed[8] and no other facts, in his view, could have changed his entitlement to admission to a state-operated treatment facility in the timeframe he asserted he was entitled to admission. *Id.* Stated differently, Mr. Chairse confirmed that

---

[8] The Commissioner recognized that Mr. Chairse was entitled to priority admission under the statute and placed him on the Priority Admission List. Harmandayan Decl. ¶ 5.

18

his claim is not a claim about denial of process, and he does not believe that procedural protections would have changed his entitlement to a particular substantive outcome. *Id.*

Mr. Chairse's own request for relief illustrates the futility of any additional procedural protections in this circumstance. Mr. Chairse apparently seeks advisement of his rights. Doktori Decl., Ex. 6 (Response to Interrogatory 2). But he acknowledged that he had an attorney who advised him of his rights and was available to answer questions, and that he was also consistently apprised of his placement on the priority admission list.[9] Doktori Decl., Ex. 2 at 36:7-9; *see also id.* at 65:1-6. Given his acknowledgement of the lack of value of any additional procedural safeguards, Mr. Chairse's procedural due process claims fail and should be dismissed.[10]

---

[9] Indeed, the fact that he was represented by counsel who he knew could raise any questions with DHS further illustrates why his procedural due process claims fail. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). DHS provided Mr. Chairse that opportunity to be heard through his lawyer's ability to raise concerns with DHS. Harmandayan Decl. ¶ 9 (stating DHS's Central Preadmissions staff is available to answer questions from counsel, such as the individual's placement on the waiting list or whether the individual qualifies for priority admission); *see also* Minn. Stat. § 253B.07, subd. 2c; Minn. Spec. R. P. Commit. Act 9(a) (providing court-appointed counsel throughout duration of commitment).

[10] That Mr. Chairse does not seek procedural protections makes sense given his interpretation of the Priority Admission Law in effect at the time of his detention. If Mr. Chairse's interpretation of the Priority Admission Law in effect at that time were correct, as the Commissioner continues to dispute, then he and all individuals on the Priority Admission List would have been entitled to admission to a state-operated treatment facility within 48 hours of detention in jail while civilly committed, and his remedy would be a mandamus claim, not a constitutional procedural due process claim. *See* Minn. Stat. §§ 586.01-.02; *see also Chanhassen Chiropractic Ctr., P.A. v. City of Chanhassen*, 663 N.W.2d 559, 562 (Minn. Ct. App. 2003) (mandamus compels an official to execute a statutorily required "duty imposed by law").

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request the Court grant them summary judgment on Plaintiff's two remaining claims.

Dated: December 2, 2024.

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

<u>**s/ Sarah Doktori**</u>
SCOTT H. IKEDA
Assistant Attorney General
Atty. Reg. No. 0386771

SARAH DOKTORI
Assistant Attorney General
Atty. Reg. No. 0403060

BRANDON BOESE
Assistant Attorney General
Atty. Reg. No. 0396385

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 583-6694 (Voice)
(651) 282-5832 (Fax)
scott.ikeda@ag.state.mn.us
sarah.doktori@ag.state.mn.us
brandon.boese@ag.state.mn.us

*Attorneys for Defendants*

|#5948622-v1