UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| O'Shea Chairse, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>State of Minnesota Department of Human Services, et al.,<br><br>Defendants. | Civil File No. 23-cv-355 (ECT/SGE)<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiff O'Shea Chairse was, by court order, committed to the custody of Defendants for placement in a state-operated treatment program in October 2022. Yet he was not admitted to any such program prior to his release from the Hennepin County Jail in December 2022, causing substantial distress. Instead, Plaintiff was incarcerated for seven weeks, without notification from Defendants regarding his rights, and without receiving proper treatment for his significant mental health issues.

## FACTUAL BACKGROUND

It is undisputed that Plaintiff was civilly committed on October 17, 2022. Declaration of Sarah Doktori ("Doktori Decl."), Ex. 4. At the time of Plaintiff's civil commitment, Plaintiff was incarcerated in the Hennepin County Jail. Doktori Decl., Ex. 2 at 34:23-35:12. Hennepin County did not provide Plaintiff with his medications, forced Plaintiff into segregation, and did not release Plaintiff from jail until December 5, 2022. Doktori Decl., Ex. 2 at 14:25-15:6, 36:10-20, 58:20-24.

Plaintiff was not placed in a state-operated treatment program at any time between October 17, 2022 and December 5, 2022, at which time he was provisionally discharged from Hennepin County Jail to Nu Way Treatment Center before "ever being admitted to a state-operated treatment facility." Declaration of Dr. Maria Harmandayan, M.D. ("Harmandayan Decl."), ¶ 4-8.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Dowden v. Cornerstone Nat'l Ins. Co.*, 11 F.4th 866, 872 (8th Cir. 2021). The moving party must demonstrate that the material facts are undisputed. *Celotex*, 477 U.S. at 322. A fact is "material" if its resolution could affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Courts must view the inferences to be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Irvin v. Richardson*, 20 F.4th 1199 (8th Cir. 2021). "[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

2

functions, not those of a judge." *Torgerson v. City of Rochester*, 643 F.3d 1013, 1042 (8th Cir. 2011) (en banc).

## ARGUMENT

### I. Plaintiff's Claims Are Not Moot, as this Court Can Provide Relief to Remedy an Ongoing Harm to Plaintiff

This case falls within the capable-of-repetition-yet-evading-review exception to mootness. "Under this doctrine, a case that would otherwise be moot is not if '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again.'" *Whitfield v. Thurston*, 3 F.4th 1045, 1047 (8th Cir. 2021) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).

Here, the challenged action occurred during a seven-week period. Doktori Decl., Ex. 2 at 14:25-15:6, Ex. 4. Seven weeks was too short a window of time to have fully litigated this matter. *Cain v. City of New Orleans*, 281 F. Supp. 3d 624, 643 (E.D. La. 2017) ("Seven *months* was too short a time to resolve this complicated suit.") (emphasis added).

Moreover, there is a reasonable expectation that Plaintiff will be subjected to the same action again. Plaintiff faces a threat of future harm that is real and immediate, because he continues to be arrested, charged, and convicted, over and over, due to his significant mental health issues and lack of treatment. *See* Declaration of Zorislav Leyderman ("Leyderman Decl."), Ex. 1-3. Indeed, the very lack of treatment that is the

3

basis of this lawsuit is a contributing factor to Plaintiff's inevitable need, in the near future, to be released from jail again and placed in a state-operated treatment program.

Defendants argue that Plaintiff was represented while he was incarcerated and could have asked one of his lawyers about his rights or his civil commitment. Yet Plaintiff's testimony flatly contradicts that assertion. Plaintiff testified that his lawyers did not know why Plaintiff had not been transferred to a state-operated facility in a timely manner. *See* Doktori Decl., Ex. 2 at 43:11-44:2, 44:11-13 ("Q: Did she explain to you that there weren't any beds at Anoka? A: No, she didn't. She didn't know. Q: She didn't – she didn't know what? A: That there were no beds at Anoka.").

### A. This Court's Order Should be Consistent with *Doe v. Hennepin County, et al.*

In *Doe v. Hennepin County, et al.*, an individual who was civilly committed to the State of Minnesota to receive mental health treatment filed a lawsuit after being placed in solitary confinement for several months. 24-CV-1392 (NEB/DTS), 2024 WL 3640622 (D. Minn. July 30, 2024). Judge Brasel granted a preliminary injunction in *Doe*, directing the state to admit the plaintiff into a treatment facility and concluding that "the state was *ordered* to take custody of Doe, and it did not. In doing so, it defied a state-court order: a state-court judge 'committed' Doe to a state treatment facility and ordered the state to 'hold' him 'safe and secure' during the 'period of commitment.'" *Id.* at *2 (emphasis in original).

As in *Doe*, Plaintiff seeks prospective injunctive relief. The amendment of the statute at issue, Minn. Stat. § 253B.10, subd. 1(b), in no way ameliorated the procedural due process concerns that this Court identified in its order denying, in part, Defendants'

4

motion to dismiss. Meanwhile, Plaintiff "continues to experience a high volume of ER encounters and his care is not able to be adequately addressed in the community. … He has been unstable in the community." Leyderman Decl., Ex. 4.

Plaintiff therefore seeks an order compelling Defendants to notify individuals awaiting transfer of their rights, including: (1) notice of their rights under current state law; (2) notice of their right to consult with an attorney; (3) notice of their right to submit a complaint to the Minnesota Department of Corrections (Inspection and Enforcement Unit) regarding any abuse related to or deprivation of medical or mental health care while awaiting transfer; and (4) notice of their right to contact Defendants to inquire about the status of their transfer. *See* Doktori Decl., Ex. 6, p. 2, Response to Interrogatory No. 2.

The Eighth Circuit has explained that "suits may be brought in federal court against state officials in their official capacities for prospective injunctive relief to prevent future violations of federal law." *Treleven v. University of Minnesota*, 73 F.3d 816, 819 (8th Cir. 1996) (quoting *Fond du Lac Band of Chippewa Indians v. Carlson,* 68 F.3d 253, 255 (8th Cir. 1995)); *In re SDDS, Inc.,* 97 F.3d 1030, 1035 (8th Cir. 1996) (recognizing *Ex Parte Young* doctrine as a fundamental exception to Eleventh Amendment immunity). Under *Ex Parte Young*, a state officer who violates the United States Constitution acts without state authority and is thus subject to suit. 209 U.S. 123, 159-60 (1908). Furthermore, state officials are "persons" under § 1983 when sued pursuant to the *Ex Parte Young* doctrine, because "such actions 'are not treated as actions against the State.'" *Treleven,* 73 F.3d at 819 (quoting *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 n.10 (1989)).

## II. There is a Dispute of Material Fact as to Plaintiff's Procedural Due Process Claims

"Due process is a flexible concept, requiring only 'such procedural protections as the particular situation demands.'" *Clark v. Kan. City Mo. Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)). "To set forth a procedural due process violation, a plaintiff, first, must establish that [their] protected liberty or property interest is at stake." *Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 817 (8th Cir. 2011) (quotation omitted). "Second, the plaintiff must prove that the defendant deprived [them] of such an interest without due process of law." *Id.* Protected liberty interests may arise from two sources – the Due Process Clause itself and the laws of the States. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

If a plaintiff is deprived of a protected liberty interest, the Court must then balance (1) the liberty interest at stake, (2) the risk of an erroneous deprivation of such interest through the procedures used, and (3) the government's interest in providing the process that it did, including the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335. The exact requirements for a process to constitute sufficient due process are flexible and specific to each particular situation. *Senty-Haugen v. Goodno*, 462 F.3d 876, 887-88 (8th Cir. 2006). The most important mechanism for evaluating the process is whether the aggrieved party received notice of the factual bases for the deprivation of the right and a fair opportunity to rebut the decision. *Id.* at 888.

Here, Plaintiff alleged, and the Court found, that Minn. Stat. § 253B.10, subd. 1(b), as it was written at the time Plaintiff filed this lawsuit, created a constitutionally enforceable liberty interest. ECF No. 47 at 10. Although that statute was subsequently amended, a reasonable jury could still find that Plaintiff's procedural due process rights were violated by Defendants. This is because a jury could find that prolonged jailing following a civil commitment violates a person's rights, *see Doe*, 2024 WL 3640622, at *2-5, and a jury could find that this violation "resulted from the absence of available procedures through which" people who are civilly committed "might have raised their prioritized admission status and challenged their prolonged jailing," ECF No. 47 at 12-13.

The Constitution requires a balancing between the liberty interest at stake, the risk of erroneous deprivation of the liberty interest through the procedure used, and the government's interest in providing the procedure that it did. *See Mathews*, 424 U.S. at 355. Plaintiff's interest in being released from incarceration following his civil commitment, coupled with his interest in receiving mental health treatment as mandated by Minnesota state law, outweighs the government's interest in locating available placement while prolonging Plaintiff's incarceration in a county jail. *See Rud v. Johnston*, 23-cv-0486 (JRT/LIB), 2023 WL 2600206, at *7 (D. Minn. Mar. 22, 2023) (finding a procedural due process violation in a very similar case involving DHS's failure to timely transfer MSOP clients to lower security facilities in violation of Minnesota statutes). The due process protections provided under the Minnesota constitution are "identical to the due process guaranteed under the Constitution of the United States." *State v. Holloway*,

7

916 N.W.2d 338, 344 (Minn. 2018) (internal quotation omitted). Thus, there is a dispute of material fact as to Plaintiff's federal and state procedural due process claims.

### III. Even if Plaintiff Cannot Seek Injunctive Relief or Damages, Plaintiff is Entitled to Attorneys' Fees if Plaintiff Prevails at Trial

While it may be unusual to proceed to trial in a case where no injunctive relief or damages are available, a reasonable jury could conclude that Plaintiff's procedural due process rights were violated and award nominal damages, triggering Plaintiff's entitlement to reasonable attorneys' fees. A plaintiff whose constitutional rights have been violated is entitled to a finding of liability and nominal damages even if no actual damages have been shown. *Duvall v. Sharp*, 905 F.2d 1188, 1190 (8th Cir. 1990); *Westborough Mall Inc. v. City of Cape Girardeau*, 794 F.2d 330, 339 (8th Cir. 1986).

Moreover, Federal Rule of Civil Procedure 54(d)(1) provides that the "prevailing party" in any civil action is entitled to recover his "costs." Though the term "costs" in Rule 54 generally means those taxable under 28 U.S.C. § 1920, *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987) (stating that "§ 1920 defines the term 'costs' as used in Rule 54(d)"), costs in civil-rights actions are different. Indeed, in 1976 Congress passed the Civil Rights Attorney's Fees Awards Act, codified at 42 U.S.C. § 1988, which provides that "in any action or proceeding to enforce a provision of [Section 1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys' fee *as part of the costs*" (emphasis added). While phrased using the permissive "may," the Supreme Court subsequently recognized that a

8

prevailing plaintiff in civil-rights litigation "should ordinarily recover an attorney's fee." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

Furthermore, such an award serves the salutary purposes behind the statute, namely, ensuring "'effective access to the judicial process' for persons with civil rights grievances." H.R. Rep. No. 94-1558, p. 1 (1976), U.S. Code Cong. & Admin. News 1976 p. 5908 (quoted in *Hensley*, 461 U.S. at 429). "In providing for attorney fee awards in civil rights cases, Congress intended to 'promote diffuse private enforcement of civil rights law by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators." *Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001) (quoting *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993)).

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendants' motion for summary judgment in its entirety.

THE LAW OFFICE OF ZORISLAV R. LEYDERMAN

Dated: December 23, 2024    By: s/ Zorislav R. Leyderman
　　　　　　　　　　　　　　　　ZORISLAV R. LEYDERMAN
　　　　　　　　　　　　　　　　Attorney License No. 0391286
　　　　　　　　　　　　　　　　Attorney for Plaintiff
　　　　　　　　　　　　　　　　The Law Office of Zorislav R. Leyderman
　　　　　　　　　　　　　　　　80 South 8th Street, Suite 900
　　　　　　　　　　　　　　　　Minneapolis, MN 55402
　　　　　　　　　　　　　　　　Tel: (612) 876-6626
　　　　　　　　　　　　　　　　Email: zrl@ZRLlaw.com

　　　　　　　　　　　　　　　　ATTORNEY FOR PLAINTIFF