UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| O'Shea Chairse, | File No. 23-cv-355 (ECT/SGE) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| State of Minnesota Department of Human Services, Shireen Gandhi, *Temporary Commissioner of the Minnesota Department of Human Services, in her official capacity*, and Jodi Harpstead, *Former Commissioner of the Minnesota Department of Human Services, in her individual capacity*, | |
| Defendants. | |

Zorislav R. Leyderman, The Law Office of Zorislav R. Leyderman, Minneapolis, MN, and Timothy M. Phillips, Law Office of Tim Phillips, Minneapolis, MN, for Plaintiff O'Shea Chairse.

Scott H. Ikeda, Sarah Doktori, Aaron Winter, and Brandon L. Boese, Office of the Minnesota Attorney General, St. Paul, MN, for Defendants State of Minnesota Department of Human Services, Shireen Gandhi, *Temporary Minnesota Commissioner of Human Services, in her official capacity*, and Jodi Harpstead, *Former Commissioner of the Minnesota Department of Human Services, in her individual capacity*.

In October 2022, Plaintiff O'Shea Chairse was civilly committed while in custody at the Hennepin County jail on criminal charges. He claims that the then-effective version of Minnesota Statute § 253B.10, subdiv. 1(b) required his admission to a state-operated treatment program within 48 hours of his civil commitment. Mr. Chairse's admission was delayed well beyond that 48-hour period. Mr. Chairse brought this case against the Minnesota Department of Human Services and its commissioner seeking to compel their

compliance with the 2022 version of § 253B.10's 48-hour rule and to recover damages, among other relief.

This is the case's second round of dispositive motions. In the first round, Defendants sought dismissal of Mr. Chairse's operative Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), and the result largely favored Defendants. Six of Mr. Chairse's eight claims were dismissed, including all damages claims. *Chairse v. Minn. Dep't of Human Servs.*, No. 23-cv-355 (ECT/ECW), 2023 WL 5984251 (D. Minn. Sept. 14, 2023). What remained were two procedural-due-process claims—one under the United States Constitution's Fourteenth Amendment and the other under the Minnesota Constitution—through which Mr. Chairse seeks injunctive and declaratory relief. In this second round, Defendants seek summary judgment against these claims.[1]

---

[1] The case's caption deserves clarification in three respects. (1) Shireen Gandhi was appointed temporary commissioner of the Minnesota Department of Human Services effective February 3, 2025, following the departure of the former commissioner, Jodi Harpstead. *See* https://mn.gov/governor/newsroom/press-releases/?id=1055-667752 (last visited May 31, 2025). The operative Amended Complaint named Harpstead as a defendant in her official and individual capacities. Am. Compl. [ECF No. 12] at 1. Pursuant to Fed. R. Civ. P. 25(d), Gandhi is substituted for Harpstead, but only in her official capacity. Mr. Chairse never sued Gandhi in her individual capacity. (2) Though Mr. Chairse's individual-capacity damages claims against Harpstead were dismissed, this dismissal does not justify removing Harpstead from the caption to the extent she is named in her individual capacity. *See Gramm v. Deere & Co.*, No. 3:14-CV-575-RLM-MGG, 2021 WL 8321873, at *2 (N.D. Ind. Nov. 15, 2021) (noting that "courts generally do not amend a case caption each time a defendant is dismissed"). Harpstead's departure as commissioner means she could no longer be sued in an official capacity. (3) The caption appearing on the Amended Complaint and on the Court's CM/ECF docket indicates that Mr. Chairse brings this case "on behalf of [himself] and all others similarly situated." Mr. Chairse filed a motion for class certification in April 2023, ECF No. 19, but withdrew it, ECF No. 39. No class-certification motion has been filed since, and no class has been certified. For these reasons, it more accurately reflects the case's individual-plaintiff character to omit language implying that Mr. Chairse sues in a representative capacity.

2

Defendants' motion will be granted. For two independent reasons, there is no longer subject-matter jurisdiction over Mr. Chairse's remaining procedural-due-process claims. First, the case is moot. During this case's pendency, the challenged statute was amended more than once in ways that matter to Mr. Chairse's claims, but Mr. Chairse did not amend his complaint to challenge any of these amendments or the statute's current version. Second, mootness aside, Mr. Chairse lacks Article III standing to seek injunctive relief.

I

The material facts are undisputed. In 2022, Mr. Chairse was charged in Hennepin County District Court with three misdemeanors arising out of alleged incidents occurring between May 18, 2022, and June 29, 2022. ECF No. 81-1 at 2.[2] A Hennepin County Judge ordered that Mr. Chairse be evaluated to determine whether he was competent to defend against these charges. *Id.* The evaluation determined that Mr. Chairse was not competent to participate in his defense. *Id.* at 3. By operation of a Minnesota Rule of Criminal Procedure, this incompetency determination resulted in the misdemeanor charges' dismissal in August 2022. *Id.*; *see id.* at 15; *see also* Minn. R. Crim P. 20.01, subdiv. 6(b) (2022) ("If the court finds the defendant incompetent, and the charge is a misdemeanor, the charge must be dismissed.").

On September 21, 2022, the Hennepin County Attorney charged Mr. Chairse with felony third-degree assault. *See* ECF No. 81-1 at 43–47. He was arrested on this charge on September 28, 2022, and jailed in Hennepin County. *See id.* at 15–16. That same day,

---

[2]  Page citations are to a document's CM/ECF pagination appearing in the upper right corner, not to a document's original pagination.

the Hennepin County Attorney's Office petitioned the Hennepin County District Court for Mr. Chairse's civil commitment. *Id.* at 35–36. On October 17, 2022, with Mr. Chairse still jailed on the third-degree-assault charge, the court granted the petition and ordered Mr. Chairse "committed … to the Commissioner of Human Services." *Id.* at 10, 41.

Under the then-effective version of § 253B.10, the circumstances of Mr. Chairse's commitment placed him in a prioritized category of patients who were required to "be admitted to a state-operated treatment program within 48 hours." Minn. Stat. § 253B.10, subdiv. 1(b); *see* ECF No. 80 ¶ 4. Specifically, because Mr. Chairse was committed after the misdemeanor charges' dismissal, he fell within the prioritized-admission category of "patients being admitted from a jail or correctional institution who are . . . committed under this chapter to the commissioner after dismissal of the patient's criminal charges." Minn. Stat. § 253B.10, subdiv. 1(b)(4) (2022). When Mr. Chairse was committed, state-operated "treatment facilities appropriate for Mr. Chairse were full." ECF No. 80 ¶ 4. Effective November 30, 2022, "Mr. Chairse was provisionally discharged to Nu Way Treatment Center." *Id.* ¶ 8.[3] Mr. Chairse was not released from jail, however, until December 5, 2022. ECF No. 81-1 at 10; *compare* Am. Compl. ¶ 24 *with* Answer [ECF No. 49] ¶ 24.

---

[3] Nu Way Treatment Center is not a state-operated treatment facility. ECF No. 80 ¶ 7. Mr. Chairse's discharge was considered "remote" because he was "provisionally discharged before ever being admitted to a state-operated treatment facility; i.e., he [was] provisionally discharged from a 'remote' location." *Id.* This type of "discharge occurs when the Medical Director for the Minnesota Department of Human Services – Mental Health and Substance Abuse Treatment Services division, and where necessary the Executive Medical Director, conclude that the patient meets the medical criteria for provisional discharge and approve a provisional discharge plan developed in collaboration with county partners." *Id.*

4

II

The theory underlying the Amended Complaint's procedural-due-process claims seems clear.[4] Mr. Chairse claims the version of Minn. Stat. § 253B.10 in effect when he was committed on October 17, 2022, required him to be admitted to a state-operated treatment program within 48 hours of the commitment order's entry. Am. Compl. ¶¶ 43 57. He claims the 48-hour rule creates a constitutionally enforceable liberty interest, that the procedures governing the rule's application were constitutionally inadequate, and that the absence of available procedures through which Mr. Chairse might have raised his prioritized-admission status and challenged his prolonged jailing caused Defendants to violate the 48-hour rule with respect to him. *See id.* ¶¶ 43, 57; *see also Chairse*, 2023 WL 5984251, at *4–5 (describing and analyzing procedural-due-process claims).

The Amended Complaint is not specific about what remedy Mr. Chairse seeks for his procedural-due-process claims. The Amended Complaint alleges he "suffered damages," but any damages remedy fell away with the Rule 12(b)(6) dismissal of the individual-capacity claims against former commissioner Harpstead. Am. Compl. ¶ 44; *see Chairse*, 2023 WL 5984251, at *7. The Amended Complaint does not describe additional procedures that might be imposed through an injunction. *See* Am. Compl. at 14–16. In a

---

[4] Though Mr. Chairse asserts his procedural-due-process claims under federal and Minnesota law, the claims are identical. "The U.S. Constitution and Minnesota Constitution afford citizens identical due-process protections." *Sunshine Childcare Center, LLC v. Ramsey Cnty.*, 7 N.W.3d 611, 615 (Minn. Ct. App. 2024) (citing *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn. 1988)), *review granted* (Sept. 17, 2024).

response to an interrogatory asking Mr. Chairse to identify the injunctive relief he seeks, Mr. Chairse wrote:

> Plaintiff seeks a procedural change by DHS for notifying individuals awaiting transfer of their rights including, without limitation, the following: (1) notice of their rights under current state law; (2) notice of their right to consult with an attorney regarding their rights; (3) notice of their right to submit a complaint to the Minnesota Department of Corrections (Inspection and Enforcement Unit) regarding any abuse related to or deprivation of medical or mental health care while awaiting transfer; and (4) notice of their right to contact DHS to inquire about the status of their transfer.

ECF No. 81-1 at 50.

### III

Minnesota Statue § 253B.10 is central to Mr. Chairse's claims. The Amended Complaint challenges Defendants' failure to comply with the version of § 253B.10 in effect when Mr. Chairse was civilly committed in October 2022. At that time, the statute generally described procedures to be followed when a person is civilly committed. It required that, when a person is civilly committed, "the court shall issue a warrant or an order committing the patient to the custody of the head of the treatment facility, state-operated treatment program, or community-based treatment program." Minn. Stat. § 253B.10, subdiv. 1(a) (2022). The statute required the Commissioner to "prioritize patients being admitted from jail or a correctional institution" who fall into any of four categories: (1) persons "ordered confined in a state-operated treatment program for" a competency examination under Minnesota Rule of Criminal Procedure 20.01; (2) persons "under civil commitment for competency treatment and continuing supervision" after being found incompetent to stand trial, *see* Minn. R. Crim. P. Rule 20.01, subdiv. 7;

(3) persons "found not guilty by reason of mental illness" pursuant to Minnesota Rule of Criminal Procedure 20.02, subdivision 8, and who are either "under civil commitment or are ordered to be detained in a state-operated treatment program pending completion of the civil commitment proceedings"; or (4) persons who are civilly committed "after dismissal of the [person's] criminal charges." Minn. Stat. § 253B.10, subdiv. 1(b)(1)–(4). As noted above, Mr. Chairse fell within the fourth category because his October 2022 civil commitment occurred after the August 2022 dismissal of his misdemeanor charges.

Of central significance to Mr. Chairse's claims here, the statute's 2022 version established a deadline by which persons who fell into any of these four categories must have been admitted to a state-operated treatment program. Beginning July 1, 2013, the statute required that persons described in any of the four prioritized-admission categories "must be admitted to a service operated by the commissioner within 48 hours." 2013 Minn. Laws ch. 108, art. 4, § 11. Prior to July 1, 2013, the law contained no such deadline; the law did not prioritize admission of civilly committed patients from a jail or correctional institution. *See id.* The statute was amended in 2020 to specify that admission "within 48 hours" must be "to a state-operated treatment program." 2020 Minn. Laws ch. 2, art. 6, § 60. Minnesota state courts have interpreted the 48-hour deadline's original 2013 version (which remained in effect in 2022) as beginning to run when a court entered the "warrant or an order committing the patient" as required by the first sentence of Minn. Stat. § 253B.10, subdiv. 1. *See Dalen v. Harpstead*, No. 23-cv-1877 (ECT/ECW), 2024 WL

169109, at *2 (D. Minn. Jan. 16, 2024), *aff'd*, 123 F.4th 900 (8th Cir. 2024); *Ly v. Harpstead*, 16 N.W.3d 788, 806 (Minn. Ct. App. 2025), *review denied* (Apr. 15, 2025).[5]

The statute has been amended several times since 2022. During the 2023 regular session, the legislature amended the 48-hour rule in § 253B.10, subdiv. 1. As amended, the statute included a new subsection (e) that read: "Patients described in paragraph (b) must be admitted to a state-operated treatment program within 48 hours of the Office of Medical Director, under section 246.018, or a designee determining that a medically appropriate bed is available. This paragraph expires on June 30, 2025." 2023 Minn. Laws, ch. 61, art. 4, § 7. The amendment was effective May 25, 2023. *See Chairse*, 2023 WL 5984251, at *2 (explaining determination of amendment's effective date). In March 2024, the legislature amended paragraph (e) to read: "Patients described in paragraph (b) must be admitted to a state-operated treatment program within 48 hours of the Office of Executive Medical Director, under section 246C.09, or a designee determining that a medically appropriate bed is available. This paragraph expires on June 30, 2025." 2024 Minn. Laws, ch. 79, art. 4, § 8.

In May 2024, the statute was amended again, this time to provide the executive board discretion to order priority admissions based on "a range of factors . . . including but not limited to: (1) the length of time the person has been on a waiting list for admission" to a treatment program; (2) "the intensity of the treatment the person needs"; (3) "the person's revoked provisional discharge status"; (4) "the person's safety and safety of others

---

[5] If there are cases interpreting the 48-hour rule's 2013 version to begin running based on a different, later event, the Commissioner has not cited them. Nor has independent research located such a case.

in the person's environment"; (5) "whether the person has access to necessary or court-ordered treatment"; (6) the "negative impacts of an admission delay on the facility referring the individual for treatment"; and (7) "any relevant federal prioritization requirements." 2024 Minn. Laws, ch. 125, art. 4, § 5 (codified as Minn. Stat. § 253B.10, subdiv. 1(b) (2024)). The amendment also added paragraph (f), which provides:

> Within four business days of determining which state-operated direct care and treatment program or programs are appropriate for an individual, the executive medical director's office or a designee must notify the source of the referral and the responsible county human services agency, the individual being ordered to direct care and treatment, and the district court that issued the order of the determination. The notice shall include which program or programs are appropriate for the person's priority status. Any interested person may provide additional information or request updated priority status about the individual to the executive medical director's office or a designee while the individual is awaiting admission. Updated priority status of an individual will only be disclosed to interested persons who are legally authorized to receive private information about the individual. When an available bed has been identified, the executive medical director's office or a designee must notify the designated agency and the facility where the individual is awaiting admission that the individual has been accepted for admission to a particular state-operated direct care and treatment program and the earliest possible date the admission can occur. The designated agency or facility where the individual is awaiting admission must transport the individual to the admitting state-operated direct care and treatment program no more than 48 hours after the offered admission date.

*Id.* (codified as Minn. Stat. § 253B.10, subdiv. 1(f) (2024)). The May 2024 amendments, in other words, eliminated the four prioritized-patient categories in favor of factors requiring individualized assessments to determine the priority a civilly committed detainee would receive in admission to a state-operated treatment program. *See id.* As relevant

9

here, the statute was amended once more during the legislature's 2025 regular session, this time to push § 253B.10, subdiv. 1(e)'s expiration date from June 30, 2025, to June 30, 2027. *See* 2025 Minn. Laws, ch. 38, art. 3, §§ 41–42.

IV

Defendants challenge subject-matter jurisdiction through their summary-judgment motion. *See* ECF No 77.[6] Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if its resolution "might affect the outcome of the suit" under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

For two reasons, there is not subject-matter jurisdiction over Mr. Chairse's remaining procedural-due-process claims. First, the case is moot because the prioritized-admission provisions appearing in § 253B.10's 2022 version that Mr. Chairse challenges in his Amended Complaint have changed materially through a series of amendments that Mr. Chairse does not challenge.

---

[6] Though it is generally better to bring a post-discovery challenge to subject-matter jurisdiction through a "factual attack" dismissal motion under Rule 12(b)(1), challenging subject-matter jurisdiction through a summary-judgment motion remains an available procedural option. *See Smith v. Bradley Pizza, Inc.*, No. 17-cv-2032 (ECT/KMM), 2019 WL 2448575, at *2 (D. Minn. June 12, 2019), *aff'd*, 821 F. App'x 656 (8th Cir. 2020).

10

The United States Constitution limits the subject-matter jurisdiction of federal courts to ongoing cases and controversies. *See* U.S. Const. art. III, § 2, cl. 1. "[A]n actual [case or] controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013) (quotation omitted). "When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief,' the case is considered moot." *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000) (quoting *Beck v. Missouri State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994)). If an action is moot because it no longer satisfies the case-or-controversy requirement, a federal court "ha[s] no discretion and must dismiss the action for lack of jurisdiction." *Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005) (citing *Powell v. McCormack*, 395 U.S. 486, 496 n.7 (1969)).

"When a law has been amended or repealed, actions seeking declaratory or injunctive relief for earlier versions are generally moot." *Teague v. Cooper*, 720 F.3d 973, 976 (8th Cir. 2013) (quotation omitted); *accord Libertarian Party of Arkansas v. Martin*, 876 F.3d 948, 951 (8th Cir. 2017). But "where a new statute 'is sufficiently similar to the repealed [statute] that it is permissible to say that the challenged conduct continues' the controversy is not mooted by the change, and a federal court continues to have jurisdiction." *Rosenstiel v. Rodriguez*, 101 F.3d 1544, 1548 (8th Cir. 1996) (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jack.*, 508 U.S. 656, 662 n.3 (1993)) (citation modified). Stated another way, "[i]f the new statute disadvantages the complainants in the same fundamental way the repealed statute did, the amendment does

11

not divest the court of the power to decide the case." *Id.* (citing *City of Jack.*, 508 U.S. at 662).

A review of *Rosenstiel* is helpful. There, the plaintiffs challenged campaign-finance laws under which certain candidates could opt "to receive a public subsidy in exchange for the candidate's agreement to adhere to specified limits on campaign expenditures." *Id.* at 1546. The plaintiffs claimed the laws violated their First Amendment rights by effectively coercing them to accept the public subsidy and subject themselves to the expenditure cap. *Id.* at 1547, 1549. While the case was on appeal, the legislature amended the statute, modifying the circumstances under which the expenditure cap applied. *Id.* at 1547. The court concluded that this amendment did not moot the plaintiffs' claims, explaining:

> [T]he amendment relates only to one subdivision of the whole larger statutory scheme assailed by the Appellants' complaint. It repealed only one of the five specific sections plaintiffs attacked and replaced it with language that still permits a waiver of the expenditure limitations while remaining eligible for the public subsidy. Essentially the amendment changes the triggering event necessary to bring the spending limits waiver into play and, accordingly, the point in the campaign when the spending limits are removed from a participating candidate. These changes are not insignificant at least as far as the actual operation of the statute is concerned. On the other hand, with respect to its effect, the amended statute still impairs the Appellants in the very same way that they claimed the prior section did. In the Appellants' view, the amendment broadens the coverage of the law (by applying it to any opponent of a participating candidate rather than just a major-party opponent) and is more, not less, coercive than the repealed subdivision. We believe that the fundamental nature of the challenged statute continues unchanged. The challenged conduct (the waiver of the spending limits) continues to exist under the new language of § 10A.25(10). The public subsidy and the tax refund provisions are unchanged. We do not believe that the controversy upon which the district court rendered its judgment is substantially different from the one presented to us

12

>by the amended statute. Accordingly, we hold the case is not moot.

*Id.* at 1548 (internal citation omitted).

This case is materially different from *Rosenstiel*. The Amended Complaint's procedural-due-process claims challenge the 2022 version of § 253B.10, that statute's lack of available procedures through which Mr. Chairse might have challenged his detention beyond the 2022 version's 48-hour rule, and his prolonged detention resulting from the absence of those procedures. *See* Am. Compl. ¶¶ 1, 23–24, 43–44, 56–59. And due to the decision on Defendants' Rule 12(b)(6) motion, the only remaining remedy Mr. Chairse may seek on his procedural-due-process claims is injunctive and declaratory relief targeting the 48-hour rule and the absence of procedures in § 253B.10's 2022 version. The procedural-due-process claims depend on the understanding that § 253B.10's 48-hour-admission provision expired 48 hours after the Hennepin County District Court entered its order committing Mr. Chairse. *See id.* ¶ 1 ("This suit challenges the failure of the State of Minnesota Department of Human Services . . . to comply with Minn. Stat. § 253B.10, subd. 1(b), which requires DHS to transfer civilly committed inmates to a state-operated treatment facility within 48 hours of their civil commitment."); *see also id.* ¶¶ 2, 6, 10, 23–24, 43, 57. Assume § 253B.10's 48-hour rule meant just that in October 2022. It has said (and meant) something very different since May 25, 2023. As explained in Part II above, the 48-hour rule was amended during the 2023 regular session to run from a determination "that a medically appropriate bed is available," and this amendment took effect on that date. 2023 Minn. Laws, ch. 61, art. 4, § 7; *Chairse*, 2023 WL 5984251, at *2. The procedural-due-process claims depend also on the absence of procedures in

13

§ 253B.10's 2022 version through which a prioritized person might challenge a prolonged detention. Amendments enacted during the 2024 regular session changed things here, too. Among other things, the 2024 amendments did away with prioritized-admission categories in favor of non-exhaustive, individualized factors and added procedures requiring the executive medical director's office to give notice of its designation determinations and enabling an interested person to "request updated priority status." 2024 Minn. Laws, ch. 125, art. 4, § 5 (codified as Minn. Stat. § 253B.10, subdiv. 1(b) (2024)).

The mootness problem seems clear. Injunctive and declaratory relief targeting the 48-hour rule and the absence of procedures in § 253B.10's 2022 version would change nothing because subsequent amendments to § 253B.10 have changed both. The 48-hour rule no longer runs from the commitment order's entry, and there are procedures to challenge an extended confinement. The Amended Complaint does not challenge these amendments. To put it in *Rosenstiel*'s terms, this is not a case where "the new statute disadvantages [Mr. Chairse] in the same fundamental way the repealed statute did," meaning the amendments moot his remaining claim. 101 F.3d at 1548. To put it in practical terms, considering the amendments, the issuance of forward-looking injunctive or declaratory relief regarding the constitutionality of § 253B.10's 2022 version would give Mr. Chairse no redress.

There is an exception to mootness, which Mr. Chairse says his procedural-due-process claims fit. *See* ECF No. 83 at 3–4. "Under [the capable-of-repetition-yet-evading-review exception to mootness], a case that would otherwise be moot is not if '(1) the challenged action was in its duration too short to be fully litigated prior to

14

its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again.'" *Whitfield v. Thurston*, 3 F.4th 1045, 1047 (8th Cir. 2021) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). "As the party invoking the exception, [Mr. Chairse] bears the burden of demonstrating that it applies." *Whitfield*, 3 F.4th at 1047 (citation omitted).

Mr. Chairse has not met this burden. In Mr. Chairse's view, the "challenged action" is his seven-week detention in violation of the 48-hour rule in § 253B.10's 2022 version. ECF No. 83 at 3. This characterization of the challenged action is not correct. To the extent he seeks injunctive and declaratory relief, Mr. Chairse's procedural-due-process claims challenge the constitutionality of § 253B.10's 2022 version. The seven-week duration of Mr. Chairse's detention in no way constrained the time available to adjudicate Mr. Chairse's constitutional challenges. In other words, had the statute's challenged 2022 version remained effective, Mr. Chairse would have faced no time crunch in litigating the case to a conclusion. What changed was the legislature's repeated amendments to the statute (which Mr. Chairse has not challenged). It is difficult to understand how this not-uncommon constitutional challenge might evade review.

A second jurisdictional problem remains even if the Second Amended Complaint could reasonably be understood to challenge § 253B.10's current version: Mr. Chairse lacks standing to seek injunctive or declaratory relief, the only remaining relief available on his procedural-due-process claims. "[T]he plaintiff's standing to sue 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) (quoting *Warth v. Seldin*,

15

422 U.S. 490, 498 (1975)). "To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury will likely be redressed by a favorable decision." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). A plaintiff has standing to seek prospective injunctive and declaratory relief when he faces an ongoing injury or a "real and immediate" threat of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–05, 107 n.8 (1983); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("We have repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient." (citation modified)). "Past exposure to illegal conduct does not by itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 102 (citation modified).

The problem here is that Mr. Chairse has neither alleged nor shown that he has been subjected to a commitment warrant or order that, in turn, subjected him to the procedures described in § 253B.10's current version, or that there is a real and impending threat he will. If those events were impending, Mr. Chairse has not explained how or why he faces a genuine and immediate threat that Defendants might violate § 253B.10's current commitment procedures. Mr. Chairse points out that he has been arrested, charged, and convicted many times "due to his significant mental health issues and lack of treatment." ECF No. 83 at 3; *see* ECF Nos. 84–85. These taken-as-true assertions are not enough to show a present case or controversy. Several contingencies must occur before a person

16

becomes subject to § 253B.10. The first is the issuance of "a warrant or an order committing the patient" to a treatment facility or program. Minn. Stat. § 253B.10, subdiv. 1(a). Mr. Chairse's past arrests, charges, convictions, and his ongoing mental-health issues do not show that Mr. Chairse's future in-detention-commitment is certain or impending. Nor do they say anything about the likelihood Defendants would violate the statute if Mr. Chairse became subject to it.

Mr. Chairse advances two remaining arguments against summary judgment. First, he argues a fact question remains regarding whether Defendants violated his constitutional rights. As support for this argument, Mr. Chairse cites *Doe v. Hennepin Cnty.*, No. 24-cv-1392 (NEB/DTS), 2024 WL 3640622 (D. Minn. July 30, 2024). This is not persuasive. The case's mootness means that any remaining fact disputes concerning the constitutionality of § 253B.10's 2022 version and its application to Mr. Chairse are no longer justiciable. It would be different, of course, had Mr. Chairse alleged a plausible claim for damages, but I concluded he did not. *See Chairse*, 2023 WL 5984251, at *7. *Doe* does not help Mr. Chairse. There, Judge Brasel found that a civilly committed detainee was likely to succeed on the merits of deliberate-indifference and punitive-conditions claims and entered a preliminary injunction requiring the plaintiff's admission to a state-operated treatment program within 72 hours. *Doe*, 2024 WL 3640622, at *1–5. This case is different. Mr. Chairse did not file this case while detained. He sought no injunction requiring his admission to treatment. And he asserted no deliberate-indifference or punitive-conditions claim.

Second, Mr. Chairse argues that "[w]hile it may be unusual to proceed to trial in a case where no injunctive relief or damages are available, a reasonable jury could conclude that Plaintiff's procedural due process rights were violated and award nominal damages, triggering Plaintiff's entitlement to reasonable attorneys' fees." ECF No. 83 at 8. If damages are not available—whether because the law precludes them, because a plaintiff has not alleged facts plausibly showing his entitlement to them, or because a plaintiff did not seek them—then damages are not available, and nominal damages are damages. *See Horelick v. Lamont,* No. 3:21-CV-1431-MPS, 2023 WL 5802727, at *10 (D. Conn. Sept. 7, 2023) (citing *Uzuegbunam v. Preczewski*, 592 U.S. 279, 292–93 (2021)). Mr. Chairse cites no case or other authority endorsing his suggested approach.

## ORDER

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendants' Motion for Summary Judgment [ECF No. 77] is **GRANTED** for lack of subject-matter jurisdiction.

2. The Amended Complaint [ECF No. 12] is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 2, 2025         s/ Eric C. Tostrud
                            Eric C. Tostrud
                            United States District Court